AUTO-OWNERS INSURANCE COMPANY v HARRINGTON

Docket No. 104155. Argued April 9, 1997 (Calendar No. 7). Decided July 29, 1997.

Auto-Owners Insurance Company brought an action in the St. Clair Circuit Court against James and Marion Harrington, seeking a declaration that it had no legal duty under the intentional-act exclusion of a homeowner's policy to defend the Harringtons against a wrongful death action resulting from James Harrington's intentional self-defense shooting of Brian Tew. The court, James T. Corden, J., granted summary disposition for the defendants, finding that the insurer was required to provide coverage and to defend. The Court of Appeals, JANSEN, P.J., and HOOD, J. (MICHAEL J. KELLY, J., dissenting), reversed (Docket No. 156446). The defendants appeal.

In an opinion by Justice WEAVER, joined by Chief Justice MALLETT, and Justices BRICKLEY, BOYLE, and RILEY, the Supreme Court *held*:

The intentional-act exclusion of the homeowner's policy applies to intentional acts taken in self-defense.

1. The exclusion at issue is unambiguous and Harrington's actions taken in self-defense fall squarely within the plain language of the exclusion. The "intended or expected" language used in the policy exclusion is clear and unambiguous, requiring a subjective inquiry into the intent or expectation of the insured. "Expected" broadens the scope of the exclusion because expected injuries are the natural, foreseeable, expected, and anticipated result of an intentional act. This "intended or expected" language bars coverage for injuries caused by an insured who acted intentionally despite awareness that harm was likely to follow. The Court of Appeals correctly inferred that Harrington certainly knew that intentionally shooting at the decedent would result in serious bodily harm or death.

2. The exclusion does not qualify the injuries excluded from coverage with terms such as "wrongful" or "unjustified." Rather, the plain language of the policy exclusion indicates that it only distinguishes injuries that are either intended or expected from those that are purely accidental, meaning unintended or unexpected. To except injurious action taken in self-defense from the intentional-acts exclusion would impermissibly disregard the clear language of

the exclusion. The injuries caused by Harrington were intentional, or at least expected, and therefore are clearly excluded from indemnification, even if taken in self-defense. Because no allegations in the complaint arguably come within the policy coverage, the insurer has no duty to defend the Harringtons in this matter.

Affirmed and remanded for further proceedings.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that in determining whether an insurer has a duty to defend, it is necessary to go beyond the terminology in the pleadings and look at the basis for the injury. The intentional-act clause is designed to exclude coverage when an insured suffers a loss resulting from the exercise of volition. Its purpose is not furthered by reading the provision to exclude coverage in self-defense situations, where the insured is not acting by conscious design, but is attempting to protect himself. When an insured acts in self-defense, the primary intent is not to injure, but to prevent injury to himself or others.

Even though bodily injury was a result in this case, it was neither expected nor intended within the terms of the policy. Precluding coverage would not further the purpose of the intentional-act exclusion. Moreover, the defendants reasonably could have expected that the homeowner's liability policy would cover a tort claim that was unfounded because of a valid self-defense justification.

212 Mich App 682; 538 NW2d 106 (1995) affirmed.

*Gross, Nemeth & Silverman, P.L.C.* (by *Mary T. Nemeth*), for the plaintiff-appellee.

*Fletcher, DeGrow* (by *Gary A. Fletcher* and *John D. Tomlinson*) for the defendants-appellants.

WEAVER, J. Whether an exclusion of liability coverage for bodily injury "expected or intended by an insured person" encompasses bodily injury caused by an insured's act of self-defense is a question of first impression for this Court. The defendants-appellants, James and Marion Harrington, argue that the Court of Appeals incorrectly reversed the trial court's grant of summary disposition for them. We disagree and hold that the Court of Appeals correctly reversed the decision of the trial court because the intentional-act

exclusion of this homeowner's insurance policy applies to intentional acts taken in self-defense. Accordingly, we affirm the Court of Appeals in its decision to reverse the trial court and remand this matter to the trial court for entry of summary disposition in favor of plaintiff-appellee pursuant to MCR 2.116(C)(8), (10).

I

On August 1, 1989, James Harrington shot and killed Brian Tew. Tew, who at that time was residing with the Harringtons' neighbor, was allegedly intoxicated that afternoon and evening. The Harringtons saw Tew acting aggressively and erratically. They were also informed by their nephew, who was visiting them that day, that Tew had told him that he could kill the nephew with his bare hands. About eleven o'clock that evening, Tew shot an automatic weapon into Lake St. Clair and threatened "to kill someone." At that point, James Harrington, who had become alarmed at Tew's behavior during the course of the afternoon and was feeling very frightened at Tew's threat to harm someone, retrieved his twelve-gauge shotgun from his garage.

Harrington did not use the gun until later that evening when Marion Harrington saw Tew scaling up the Harringtons' garage and approaching the window to the room where she and the children were. Harrington did not actually see Tew's weapon, but erroneously assumed that Tew still had the automatic weapon and was going to use it to harm his wife and children. Harrington got his twelve-gauge shotgun, aimed at Tew, and shot him in the stomach. Tew died as a result of the shooting.

Despite the fact that Tew was unarmed when Harrington shot and killed him, the St. Clair County prosecutor never brought charges against Harrington for the shooting.

On November 20, 1989, Tew's father filed a wrongful death action against the Harringtons. Defendant-appellees insurer, Auto-Owners Insurance Company, brought the instant declaratory judgment action, requesting that the court find that it had no legal duty to defend the Harringtons because James Harrington's intentional shooting of Tew fell within the intentional-act exclusion of the insurance policy. Despite deposition testimony by James Harrington that he intended to shoot Tew, the trial court granted the Harringtons' summary disposition motion under MCR 2.116(C)(8) and (10), and found that the insurer had to provide coverage and a defense for the Harringtons.

The Court of Appeals reversed and held that the policy exclusion language regarding acts "expected or intended by an insured person" was unambiguous and required the insured's subjective intent to injure.[1] In this case, the Court of Appeals majority found it apparent from the facts that Harrington intended to shoot and injure Tew. It concluded that Harrington's actions, therefore, fell squarely within the intentional-act exclusion to coverage.[2]

We granted leave to appeal and now affirm the decision of the Court of Appeals.

---

[1] 212 Mich App 682, 686; 538 NW2d 106 (1995).

[2] *Id.*

II

This Court must decide whether the insurer has a duty to defend the Harringtons under the terms of their insurance contract.

This Court has stated that an insurer's duty to defend can be broader than the duty to indemnify, and extends to any allegations contained in the underlying complaint that even "arguably come within the policy coverage . . . ." *Frankenmuth Mut Ins Co v Piccard*, 440 Mich 539, 546; 489 NW2d 422 (1992) (RILEY, J., plurality opinion). For the following reasons, we find the exclusion at issue to be unambiguous, and we further find that Harrington's actions taken in self-defense fall squarely within the plain language of the exclusion.

Resolution of the matter before us turns on our interpretation and application of the insurance contract and, specifically, on our interpretation of the "expected or intended" language in the intentional-act exclusion at issue.[3] An insurance policy is an agreement between parties that a court interprets "much the same as any other contract" to best effectuate the intent of the parties and the clear, unambiguous language of the policy. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). To do so, the court looks to the contract as a whole and gives meaning to all its terms. *Id.*, citing *Fresard v*

---

[3] In interpreting this insurance contract, the Court must conduct a de novo review of the trial court's decision granting summary judgment to defendants under MCR 2.116(C)(8) and (10). *Powers v Detroit Automobile Inter-Ins Exchange*, 427 Mich 602; 398 NW2d 411 (1986). Accordingly, this Court should affirm the grant of summary judgment only if the proceedings show that plaintiff is entitled to judgment as a matter of law and there are no genuine issues of material fact. All inferences are drawn in favor of the nonmoving party.

*Michigan Millers Mut Ins Co*, 414 Mich 686, 694; 327 NW2d 286 (1982).

Interpretation of an insurance policy ultimately requires a two-step inquiry: first, a determination of coverage according to the general insurance agreement and, second, a decision regarding whether an exclusion applies to negate coverage. This Court has held that an insurance policy provision is valid " 'as long as it is clear, unambiguous and not in contravention of public policy.' " *Id.*, quoting *Raska v Farm Bureau Mut Ins Co of Michigan*, 412 Mich 355, 361-362; 314 NW2d 440 (1982). The Harringtons' homeowner's insurance policy provided, in relevant part:

## COVERAGE E—PERSONAL LIABILITY

*We will pay all sums which an insured person becomes legally obligated to pay as damages because of bodily injury,* personal injury (libel, slander or defamation of character; false arrest, detention or imprisonment or malicious prosecution; invasion of privacy, wrongful eviction or wrongful entry) or property damage *covered by this policy.*

*If a claim is made or suit is brought against the insured person for liability under this coverage, we will defend the insured person at our expense, using lawyers of our choice.* We are not obligated to defend after we have paid an amount equal to the limit of our liability. We may investigate or settle any claim or suit as we think appropriate. [Emphasis added.]

In this case, Harrington's fatal shooting of Tew clearly falls within the policy's definition of bodily injury.[4]

However, this coverage is limited by an intentional-act exclusion, which reads as follows:

---

[4] The policy defines "bodily injury" to mean "bodily injury, sickness or disease and includes resulting care, loss of services or death."

Under Personal Liability Coverage and Medical Payments to Others Coverage we do not cover:

\*     \*     \*

bodily injury or property damage *expected or intended by an insured person.* [Emphasis added.]

Such an exclusion is to be strictly construed in favor of the insured to the extent possible. *Churchman,* 440 Mich 567.

In this case, the Court of Appeals found that the exclusion language regarding expected or intentional injury was unambiguous. We agree. In fact, this Court has repeatedly held that the "intended or expected" language that is used in the policy exclusion is "clear and unambiguous" as applied to a variety of similar factual contexts. *Metropolitan Property & Liability Ins Co v DiCicco,* 432 Mich 656, 679; 443 NW2d 734 (1989) (RILEY, C.J., lead opinion).[5]

We further agree with the Court of Appeals that this language requires a subjective inquiry into the intent *or expectation* of the insured. *Arco Industries Corp v American Motorists Ins Co,* 448 Mich 395, 407; 531 NW2d 168 (1995). In this case, the policy's use of the word "expected" broadens the scope of the exclusion because "expected" injuries are the "natural, foreseeable, expected, and anticipated result of an intentional act." *DiCicco, supra* at 674.[6] We have,

---

[5] See also *Auto Club Group Ins Co v Marzonie,* 447 Mich 624, 641-642; 527 NW2d 760 (1994) (RILEY, J., plurality opinion); *Auto-Owners v Churchman, supra* at 567-568; *Buczkowski v Allstate Ins Co,* 447 Mich 669, 685; 526 NW2d 589 (1994); *Allstate Ins Co v Freeman, supra* at 673-676 (RILEY, C.J., lead opinion).

[6] In *Frankenmuth Mut Ins Co v Piccard,* 440 Mich 539, 550-551; 489 NW2d 422 (1992) (RILEY, J., plurality opinion), a plurality of this Court acknowledged:

therefore, stated that this "intended or expected" language bars coverage for injuries caused by an insured who acted intentionally despite his awareness that harm was likely to follow from his conduct. *Auto Club Group Ins Co v Marzonie*, 447 Mich 624, 641-642; 527 NW2d 760 (1994) (RILEY, J., plurality opinion); *Frankenmuth, supra* at 550. "In other words, coverage is precluded if the insured's claim that he did not intend or expect the injury 'flies in the face of all reason, common sense and experience.'" *Marzonie*, 447 Mich 642 (RILEY, J., lead opinion), quoting *DiCicco*, 432 Mich 720.

In his deposition testimony, Harrington admitted that he intentionally pointed his gun at Tew and intended to shoot him, hoping to stop Tew's advance toward the bedroom window. From these admissions, the Court of Appeals majority correctly inferred that Harrington certainly was aware or "knew that intentionally shooting at Brian would result in serious bodily harm or death."[7] We agree and find that Harrington intended, or at least expected, that bodily injury would result from shooting Tew; moreover, we find that any conclusion to the contrary would "fl[y] in the face of all reason, common sense and experience." *Id.*[8]

---

There is a significant difference between insurance contracts that exclude both intentional and expected injuries and those that merely exclude intentional injuries. . . . [I]n order for an insurer to avoid liability for an "expected" injury, it must be shown that the injury suffered by the victim is the natural, foreseeable, expected, and anticipatory result of an intentional act by the insured. [Discussing *Group Ins Co of Michigan v Morelli*, 111 Mich App 510, 516; 314 NW2d 672 (1981).]

[7] Note 1 *supra* at 687.

[8] We find this holding to be consistent with this Court's prior determinations that injurious action by an insured who is ill or intoxicated, and

In so holding we acknowledge that certain other jurisdictions have found that an insured's intentional act taken in self-defense does not constitute intentional conduct. See *Transamerica Ins Group v Meere*, 143 Ariz 351; 694 P2d 181 (1984), and *Allstate Ins Co v Novak*, 210 Neb 184; 313 NW2d 636 (1981). However, our holding today is consonant with the majority of state courts that have similarly refused to create a self-defense exception to the intentional-act exclusion. Moreover, it is true to the plain wording of the exclusion. Indeed, while the Harringtons argue that acts taken in self-defense are not "intentional" because they are reactionary and a justifiable response to unwarranted aggression, this reasoning fails because the exclusion does not qualify the injuries excluded from coverage with terms such as "wrongful" or "unjustified." Rather, the plain language of the policy exclusion indicates that it only distinguishes injuries that are either "intended or expected" from those that are purely accidental, meaning unintended or unexpected.

To except injurious action taken in self-defense from the intentional-acts exclusion would impermissibly disregard the clear language of the exclusion in the contract between insurer and insured. We refuse to do so in this case and find that the exclusion is unambiguous and that the injuries caused by Harring-

subsequently absolved from civil or criminal liability, is nonetheless excluded from coverage. Indeed, this Court found that an insured who is found to be insane or mentally ill may, nonetheless, expect or intend to cause injury so as to fall within the exclusionary clause. *Auto-Owners Ins Co v Churchman*, 440 Mich 572-573. Furthermore, an intoxicated person may form a subjective expectation or intent to injure and, accordingly, be excluded from coverage for intentional acts. *Group Ins Co of Michigan v Czopek*, 440 Mich 590, 601; 489 NW2d 444 (1992).

ton were intentional, or at least expected, and therefore clearly excluded from indemnification coverage, even if taken in self-defense.[9]

Moreover, because we find that no allegations in the complaint even arguably come within the policy coverage, we find that the insurer has no duty to defend the Harringtons in this matter.

III

Accordingly, we affirm the Court of Appeals in its decision to reverse the decision of the trial court and remand this matter to the trial court for entry of summary disposition in favor of plaintiff-appellee pursuant to MCR 2.116(C)(8), (10).

MALLETT, C.J., and BRICKLEY, BOYLE, and RILEY, JJ., concurred with WEAVER, J.

KELLY, J. I respectfully dissent. I would reverse the Court of Appeals determination that plaintiff insurance company is not obligated to defend the claims brought in the underlying action.

An insurer's duty to defend is distinct from its duty to indemnify. *Allstate Ins Co v Freeman*, 432 Mich 656, 662; 443 NW2d 734 (1989) (RILEY, C.J.). The duty to defend is broader and extends to any allegations that arguably come within the policy coverage. *Frankenmuth Mut Ins Co v Piccard*, 440 Mich 539,

---

[9] In affirming the decision of the Court of Appeals, we note that policy concerns also weigh in favor of finding that the "expected or intended" language does not include intentional acts taken in self-defense. The interests to be balanced include, on the one hand, compensation to persons injured and in compliance with the contract between insured and insurer, and, on the other hand, the interest of the people of this state in refusing to compensate or indemnify the intentionally injurious acts of another, whether legally excused in the criminal or civil context or not. See *Group Ins Co of Michigan v Czopek*, n 8 *supra* at 608 (BOYLE, J., concurring).

546; 489 NW2d 422 (1992). Any doubt about the duty to defend must be resolved in the insured's favor. *Freeman, supra.* In determining whether an insurer has a duty to defend, it is necessary to go beyond the terminology in the pleadings and look at the basis for the injury. *Id.* at 662-663.

This is the first time that this Court has decided whether acts of self-defense are excluded by an intentional-act exclusion in a homeowner's insurance policy. Previously, we have discussed whether insurance coverage is precluded where bodily injury is caused by an insured who is mentally ill or intoxicated. *Auto-Owners Ins Co v Churchman,* 440 Mich 560; 489 NW2d 431 (1992); *Group Ins Co of Michigan v Czopek,* 440 Mich 590; 489 NW2d 444 (1992).

In *Churchman,* we concluded that, although a mentally impaired insured may be unable to form the requisite criminal intent for murder, he can intend or expect the damages he causes. *Id.* at 563. Similarly, in *Czopek,* we held that an assault by an intoxicated party was not an "occurrence" under the terms of the policy.

The defenses of mental illness and intoxication differ, of course, from the defense of self-defense. With regard to the former, while conduct when under their influence is legally excused, it is nonetheless culpable. By contrast, conduct in the nature of self-defense is legally justified.

Other jurisdictions have discussed the issue whether insurance coverage is precluded where bodily injury was caused by an insured who was acting in self-defense. In *Transamerica Ins Group v Meere,*[1]

---

[1] 143 Ariz 351; 694 P2d 181 (1984).

Meere and a friend were confronted by several off-duty employees of the Arizona State Prison after leaving a bar. Pruitt, a prison guard, approached Meere. The two exchanged words, and Pruitt struck Meere. Meere put up his hands and said that he did not want to fight. Pruitt struck him again. The two then exchanged blows. The fight ended when Meere knocked Pruitt to the ground and kicked him as he attempted to get up and assault Meere again. Pruitt lost partial sight in one eye. *Id.* at 353.

He brought a tort action against Meere, who claimed self-defense. *Id.* Meere's insurance company, Transamerica, brought a declaratory action to establish that it had no duty to defend or indemnify Meere, because its policy excluded coverage for intentional acts. *Id.* at 353-354.

The Arizona court ruled that Transamerica had a duty to defend Meere. It noted that insureds purchase insurance coverage to guard against risks outside their control. *Id.* at 355. The insurance company establishes its premium on the basis of actuarial calculations of the random occurrence of covered events in a given population. *Id.* at 356. The intentional-act exclusion enables insurance companies to set rates and supply coverage for unintentional and uncertain losses. If an insured is allowed through intentional acts to consciously control risks covered by the policy, a central concept of insurance is violated. *Id.*, citing 7A Appleman, Insurance Law & Practice, § 4492.01, p 21.

The court found that the clause is designed to exclude coverage when the insured suffers a loss resulting from the exercise of his own volition. Its purpose is not furthered by reading the provision to exclude coverage in self-defense situations, where the insured is not acting by conscious design, but is attempting to protect himself. *Id.* On the basis of that logic, the court found that the insurance company was required to defend Meere.

Other jurisdictions deciding this issue have recognized that, when an insured acts in self-defense, his primary intent is not to injure. Rather, he acts for the purpose of preventing injury to himself or others. Therefore, even though bodily injury is a result, it was neither expected nor intended within the terms of the policy. *Allstate Ins Co v Novak*, 210 Neb 184, 192-193; 313 NW2d 636 (1981); *Mullen v Glens Falls Ins Co*, 73 Cal App 3d 163; 140 Cal Rptr 605 (1977); *Farmers Ins Exchange v Sipple*, 255 NW2d 373 (Minn, 1977); *Cowan v Ins Co of North America*, 22 Ill App 3d 883; 318 NE2d 315 (1974).

I agree with the reasoning of the jurisdictions that have found a duty to defend where the insured acts in self-defense. Precluding coverage in this case would not further the purpose of the intentional-act exclusion. Moreover, Harrington reasonably could have expected that the homeowner's liability policy would cover a tort claim that was unfounded because of a

valid self-defense justification. Therefore, I would reverse the decision of the Court of Appeals.

Cavanagh, J., concurred with Kelly, J.