OPINION
{¶ 1} Plaintiffs-appellants, MJ Kelly, Ohio, Inc. and MJ Kelly, Kentucky, Inc., appeal the decision of the Butler County Court of Common Pleas granting the summary judgment motion of defendant-appellee, Innatech, LLC. We reverse the common pleas court's decision and remand the case for further proceedings.
 {¶ 2} Appellants (hereafter referred to as "MJ Kelly") owned and operated a plant in Lebanon, Ohio that manufactured molded plastic parts for use in the automobile, truck, and appliance industries. In April 2002, MJ Kelly entered into an "Asset Purchase Agreement" with Innatech. Under the agreement, MJ Kelly agreed to sell all of its tangible and intangible assets to Innatech for $8.3 million.
 {¶ 3} Schedule 3.4(a), attached to the parties' agreement, set forth a "Preliminary Asset List," which listed values for MJ Kelly's assets. Section 3.4(e) of the contract stated that if the aggregate value of the "Preliminary Asset List" was greater than the aggregate value of the "Closing Asset List," the purchase price would be reduced by the difference. Similarly, if the aggregate value of the "Preliminary Asset List" was less than the aggregate value of the "Closing Asset List," the purchase price would be increased by the difference. The agreement required MJ Kelly to complete the "Closing Asset List" within 20 days after the "Closing Date," with Innatech having the opportunity to object to the values.
 {¶ 4} A dispute subsequently arose between the parties with regard to the "Preliminary Asset List." Innatech asserted that the values set forth in the "Preliminary Asset List" attached as Schedule 3.4(a) should be the values used in determining the purchase price adjustment. However, MJ Kelly asserted that some of the values reflected in the "Preliminary Asset List" were inaccurate, and that certain provisions of the contract modified the "Preliminary Asset List" and created new values to be used in determining the purchase price adjustment. Using MJ Kelly's figures, the purchase price would have been reduced by $341,220. Using Innatech's figures, the purchase price would have been reduced by $877,126.
 {¶ 5} MJ Kelly filed a complaint for a declaratory judgment in the common pleas court, asking the court to order that the reduction in the purchase price be $341,220. Innatech counter-claimed, seeking a declaratory judgment that the reduction in the purchase price be $877,126. Both parties filed motions for summary judgment.
 {¶ 6} After hearing arguments and reviewing memoranda on the parties' motions, the common pleas court granted Innatech's summary judgment motion and denied MJ Kelly's summary judgment motion. The court found that the contract was unambiguous and required the parties to use the values stated in the "Preliminary Asset List" in determining the purchase price adjustment. According to the court, language contained in the "Preliminary Asset List" indicated that while some of the values on the list differed from the values on more recent financial statements, the parties had agreed to use the listed values in determining the purchase price adjustment. Accordingly, the court found that based on the values in the "Preliminary Asset List," the purchase price should be reduced by $877,126.
 {¶ 7} MJ Kelly now appeals the common pleas court's decision, assigning one error as follows:
 {¶ 8} "The trial court erred by ruling that the footnote contained on schedule 3.4(a) was dispositive of the issues and necessarily meant that schedule 3.4(a) modified schedules 1.1 and 10.7, in light of separate contract language which made clear that 3.4(A) was preliminary in nature and was subject to the disclosures contained on schedules 1.1 and 10.7."
 {¶ 9} MJ Kelly argues that the common pleas court incorrectly interpreted the parties' agreement. According to MJ Kelly, the court too narrowly focused its analysis on an asterisk in Schedule 3.4(a). MJ Kelly asserts that, taking into account all the provisions of the contract, the contract is ambiguous as to what values to use for the "Preliminary Asset List." MJ Kelly urges this court to reverse the common pleas court's decision and remand the case to the common pleas court so that the court can consider extrinsic evidence relevant to the parties' intent.
 {¶ 10} According to Section 20.5 of the contract, the parties agreed that the contract is governed by Michigan law. Like the common pleas court, we find that clause to be enforceable based on the rule set forth in Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.
(1983), 6 Ohio St.3d 436, syllabus.
 {¶ 11} We review the common pleas court's decision granting Innatech's summary judgment motion de novo. Ardt v. Titan Ins. Co. (1999),233 Mich.App. 685, 688, 593 N.W.2d 215. Employing that standard of review, we must determine whether the common pleas court was correct in finding that no genuine issues of material fact existed, and that Innatech was entitled to summary judgment as a matter of law. Id.
 {¶ 12} In interpreting a contract, a court must look to the contract as a whole and give meaning to all its terms. Auto-Owners Ins. Co. v.Harrington (1997), 455 Mich. 377, 381-382, 565 N.W.2d 839. If the language of a contract is clear and unambiguous, extrinsic evidence cannot be considered and the court must enforce the contract as written.Wilkie v. Auto-Owners Ins. Co. (2003), 469 Mich. 41, 51-52, 664 N.W.2d 776. However, if a contract is ambiguous, extrinsic evidence is admissible to explain the ambiguity, and the trier of fact is to determine the intent of the parties. Klapp v. United Ins. Group Agency, Inc. (2003),468 Mich. 459, 469, 663 N.W.2d 447. A contract is ambiguous if its language "is reasonably susceptible to more than one interpretation."Rinke v. Automotive Moulding Co. (1997), 226 Mich.App. 432, 435,573 N.W.2d 344.
 {¶ 13} The parties' agreement is clear as to how to calculate the purchase price adjustment. The adjustment is simply the difference in aggregate value between the "Preliminary Asset List" and the "Closing Asset List." However, the parties differ as to what values constitute the values of the "Preliminary Asset List." We must determine whether the contract is unambiguous or ambiguous with respect to which values should be used in the "Preliminary Asset List."
 {¶ 14} Schedule 3.4(a) of the agreement, entitled, "The Preliminary Asset List," lists values for MJ Kelly's assets. An asterisk appears next to certain values. The document states that the asterisk means the following: "Numbers differ from most recent version of December 31, 2001 financial statements but are included above based on earlier December 31, 2001 financial statements as agreed by Seller and Buyer." The common pleas court reasoned that this language explaining the asterisk clearly shows that, while the parties were aware that some of the values in the "Preliminary Asset List" were not accurate, they nonetheless agreed to use them and intended that they be used in determining the purchase price adjustment.
 {¶ 15} Schedule 10.7, entitled "Financial Statements" and also attached to the agreement, contains the sub-heading, "Exceptions to the `Complete and Correct' Financial Statements." Under that sub-heading, the schedule states, "See Attached List." The attached list, entitled "Financial Statement Exception List," sets forth several corrections to the December 31, 2001 financial statements, which were the basis for the asset values contained in the "Preliminary Asset List." The schedule states that "[a]ll of these items have been discussed by the Seller and the Buyer in detailed discussions."
 {¶ 16} Section 10.7 of the agreement states in relevant part as follows: "Except as otherwise disclosed on Schedule 10.7, Sellers' books, records, and work papers are complete and correct in all material respects; have been maintained on an accrual basis in accordance with GAAP; and in all material respects accurately reflect, and will accurately reflect, the basis for the financial condition and the results of Sellers' operations that are set forth in the Financial Statements and are to be set forth in the Preliminary Balance Sheet and the Closing Balance Sheet." (Emphasis added.)
 {¶ 17} Section 20.7 of the agreement states that "[d]isclosure on any one schedule will constitute disclosure on all schedules." The common pleas court found that disclosure of the preliminary asset values in Schedule 3.4(a) "constituted a disclosure on the other schedules" of the agreement and further supported the conclusion that the parties agreed to use the values listed in the "Preliminary Asset List" to determine the purchase price adjustment.
 {¶ 18} After reviewing the contract, we conclude that the contract is "reasonably susceptible to more than one interpretation" and is therefore ambiguous. The explanation of the asterisk in Schedule 3.4(a), read in isolation, appears to show that the parties agreed to use the values listed in the "Preliminary Asset List," despite their inaccuracy, as the values to determine the purchase price adjustment. However, when Schedule 3.4(a) is read in conjunction with the rest of the contract, particularly Schedule 10.7 and Section 10.7, what the parties intended becomes unclear. Section 10.7 could reasonably be construed to mean that the corrections set forth in Schedule 10.7 require the adjustment of certain values listed in the "Preliminary Asset List." Further, the meaning and effect of the "disclosure" language in Section 20.7 is unclear. It is unclear whether the disclosure in Schedule 3.4(a) or the disclosure in Schedule 10.7 controls and "constitute[s] disclosure on all schedules."
 {¶ 19} Accordingly, we sustain MJ Kelly's assignment of error. Because we find the contract ambiguous, we remand this case to the common pleas court for a hearing on the parties' intent, taking into account relevant extrinsic evidence. The common pleas court's decision granting Innatech's summary judgment motion is reversed.
 {¶ 20} Judgment reversed and cause remanded for further proceedings according to law and consistent with this opinion.
Young and Valen, JJ., concur.
Valen, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution. At the time this case was argued, Judge Valen was a duly elected judge of the Twelfth District Court of Appeals.