NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0390n.06

Case Nos. 24-1264/24-1265

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Aug 05, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff - Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| DANIELE GIUSEPPE GIANNONE (24-1264); HEIDI C. AULL, personal representative for the estate of Kimberly Ann Mollicone (24-1265), | ) ) ) ) | OPINION |
| Defendants - Appellants. | ) ) | |

Before: THAPAR, NALBANDIAN, and RITZ, Circuit Judges.

RITZ, J., delivered the opinion of the court in which THAPAR and NALBANDIAN, JJ., concurred. NALBANDIAN, J. (pp. 9–13), delivered a separate concurring opinion.

**RITZ, Circuit Judge.** Kim Mollicone was tragically killed when a gunfight broke out between her husband, Matthew Mollicone, and Daniele Giannone. Ms. Mollicone's estate sued Giannone in Michigan state court. These adversaries now join together to argue that State Farm should defend and indemnify Giannone in the state-court litigation. A federal district court granted summary judgment to State Farm, finding that Giannone's State Farm insurance policy did not cover his actions. We affirm.

**BACKGROUND**

At this stage, the parties still dispute elements of what took place. We view the facts in the light most favorable to Ms. Mollicone's estate and Giannone.

Mr. Mollicone believed his wife was having an affair with Giannone. Mr. Mollicone, with Ms. Mollicone in the car, drove to Giannone's house to confront him. After Mr. Mollicone walked up the driveway to Giannone's garage and flashed his firearm at Giannone, Giannone drew his own gun and fired a warning shot. Mr. Mollicone began shooting at Giannone, and a gunfight ensued.

Giannone ran out of bullets. Mr. Mollicone chased Giannone, shooting him in the foot and knee, as Giannone ran into the house. When Giannone entered his home, Mr. Mollicone remained outside, and the gunfight paused.

Giannone then heard a woman screaming outside, so he retrieved a second firearm from the garage and returned to the driveway. As Ms. Mollicone was backing out of his driveway with Mr. Mollicone in the passenger seat, Giannone shot at the car. Giannone admits he was aiming at Mr. Mollicone, and he claims that he fired because he saw a gun poke out of the passenger window and heard shots. During this final exchange of gunfire, Ms. Mollicone was fatally shot in the neck.

At the time of the shooting, Giannone was covered by a State Farm homeowner's insurance policy ("the policy"). The policy contained two relevant clauses. First, it provided for litigation defense, indemnity for damages, and medical payment coverage when the property damage or bodily injury at issue was "caused by an occurrence." RE 7-2, Policy, PageID 145-46. The policy defined "occurrence" as "an accident" that results in "bodily injury" or "property damage." *Id.* at PageID 163.

Second, the policy contained an intentional-acts exclusion to personal liability or medical payment coverage. This provision excluded acts from coverage that were (1) "a result of a willful and malicious act or omission of the insured;" (2) "intended by the insured;" or (3) "would have been expected by the insured based on a reasonable person standard." *Id.* at PageID 147. The

intentional-acts exclusion explicitly provided that "exclusions [(2) and (3)] above do not apply to bodily injury or property damage resulting from the use of reasonable force to protect persons or property." *Id.*

Mr. Mollicone (but not Giannone) faced criminal charges for his actions at Giannone's residence. Ms. Mollicone's estate filed a civil lawsuit in Michigan state court against Giannone and Mr. Mollicone, alleging negligence, assault, and battery.

Giannone asked State Farm to defend and indemnify him in the state-court proceedings. In turn, State Farm filed this action in federal district court seeking a declaratory judgment that it has no duty to defend or indemnify Giannone. State Farm also named Heidi Aull, the representative of Ms. Mollicone's estate, as a co-defendant. State Farm later moved for summary judgment.

The district court granted the motion, finding that Giannone's actions did not qualify as an "accident," so State Farm had no duty to indemnify him. Ms. Mollicone's estate and Giannone appealed.

**ANALYSIS**

We review a district court's grant of summary judgment de novo. *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 312 (6th Cir. 1997). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

I.

The parties agree that Michigan law governs the interpretation of the policy. Under Michigan law, "unambiguous contracts, including insurance policies, are to be enforced as written

unless a contractual provision violates law or public policy." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 43 (Mich. 2005).

The key issue is whether Ms. Mollicone's shooting constituted an "occurrence." The policy defined an occurrence as "an accident" that results in "bodily injury" or "property damage." RE 7-2, Policy, at PageID 163. Ms. Mollicone's estate and Giannone argue that while Giannone intended to fire the gun, he did not intend to injure or aim at Ms. Mollicone, and her injuries are therefore a covered accident.

Michigan law defines an accident, for purposes of interpreting insurance contracts, as "an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832, 838 (Mich. 1999) (quoting *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 531 N.W.2d 168, 173 (Mich. 1995)). We frame the allegedly accidental events from the standpoint of the insured party. *Id.* Generally, "an accident may include an unforeseen consequence of an intentional act." *Auto Club Grp. Ins. Co. v. Marzonie*, 527 N.W.2d 760, 766 (Mich. 1994).

But unforeseen consequences are not accidental when "the intended act created a direct risk of harm from which the consequences should reasonably have been expected by the insured." *Allstate Ins. Co. v. McCarn*, 645 N.W.2d 20, 23 (Mich. 2002). Unless the policy language specifies otherwise, Michigan uses a subjective standard, meaning we look to whether the insured should have reasonably expected the consequences of their act. *Id.* at 24. To prevail, then, Ms. Mollicone's estate and Giannone must show that Ms. Mollicone's death was not a foreseeable result of aiming and shooting a gun at the vehicle she occupied.

They cannot make this showing. Ms. Mollicone's estate and Giannone point us to two Michigan cases in which subjective expectations rendered intentional, harmful actions accidental under an insurance policy. The cases, however, are distinguishable. First, in *Metropolitan Property & Liability Insurance Co. v. DiCicco*, 443 N.W.2d 734 (Mich. 1989), one college student brandished a knife at another during a dormitory fight. 443 N.W.2d at 738. The second student grabbed the knife-wielding student by the throat and tried to flip him around. *Id.* In the confusion, the second student felt the knife withdraw from his stomach. *Id.* The knife-wielding student claimed he intended only to scare his classmate and did not intend to use the knife. *Id.* The Michigan Supreme Court held the stabbing was an accidental "occurrence" because the facts were not clear-cut enough to find an intent to stab. *Id.* at 742.

Second, in *Allstate Insurance Co. v. McCarn*, 645 N.W.2d 20 (Mich. 2002), a teenager pointed a gun he believed to be unloaded at a friend and fatally shot him. 645 N.W.2d at 22. As in *DiCicco*, the Michigan Supreme Court held the incident was an accident and therefore an occurrence. *Id.* at 27. Under the subjective standard, the court reasoned, the insured teenager did not "intend or reasonably expect" that shooting a gun he believed to be unloaded would hurt his friend. *Id.* at 27-28.

*DiCicco* and *McCarn* are meaningfully different from the facts here. In neither *DiCicco* nor *McCarn* did the insured party use a weapon with a belief that he could cause bodily harm. In other words, the intended act itself did not occur as planned. For instance, in *DiCicco*, the college student claimed he only intended to brandish a knife, not stab someone. 443 N.W.2d at 738. And in *McCarn*, the teenager only meant to pull the trigger of an unloaded gun, not shoot it. 645 N.W.2d at 25. By contrast, Giannone aimed his loaded gun at Mr. Mollicone and fired, expecting

a bullet to leave the chamber. The act took place as intended, even if Giannone desired a different result.

The actions here are much closer to those in *Masters*, where a store owner purposefully set a fire to commit insurance fraud, but the fire spread much more widely than he expected. 595 N.W.2d at 835. There, the court declined to find an "occurrence," reasoning that the store owner should have foreseen the damage because "of the direct risk of harm intentionally created by [his] actions." *Id.* at 839 (quoting *Marzonie*, 527 N.W.2d at 771 (Griffin, J., concurring)). Similarly, in *Nabozny v. Burkhardt*, 606 N.W.2d 639, 644 (Mich. 2000), the court held that a broken ankle, though more harmful than intended, was a foreseeable result of tripping another during a fight. In both *Masters* and *Nabozny*, the acts—starting a fire and tripping—took place as intended. But the ultimate harms—widespread flames and a broken ankle—were beyond what the perpetrator expected.

While *DiCicco* and *McCarn* held that harm was accidental based on the subjective beliefs of the insured, *Masters* and *Nabozny* declined to find coverage because greater-than-expected damages were foreseeable. The latter cases are more analogous to this case. Giannone subjectively intended to cause harm, just not the harm that ultimately came about. Accordingly, Giannone's conduct was not accidental and not a covered occurrence.

## II.

Ms. Mollicone's estate and Giannone next argue that the analysis changes if Giannone was plausibly acting in self-defense. Along these lines, Giannone claims that he saw a gun poke out of the passenger window and, out of concern for his and his family's safety, fired back. At this stage, the factual record is not developed enough to determine whether Giannone acted in self-

defense.  But we do not need to reach this question, because such a determination would not affect State Farm's liability.

The Michigan Supreme Court has not directly decided whether actions taken in self-defense are "occurrences" under an insurance policy.  But, in addressing the closely related issue of whether the intentional-acts exclusion of an insurance policy applies, the Court has held that actions taken in self-defense are "intentional."[1]  *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 842-43 (Mich. 1997).  In *Harrington*, an insured man intentionally shot an intruder who he had reason to believe was armed and intended harm.  *Id.* at 840.  The court held that the insured's actions were not covered under his insurance policy, because actions taken in self-defense were different from "those that are purely accidental" and excluded as intentional acts.  *Id.* at 842.  *Harrington*'s reasoning implies that, under Michigan law, intentional actions taken in self-defense are not accidental.  They likely thus do not constitute an "occurrence."

Indeed, Michigan appellate courts have held in multiple instances that actions taken in self-defense are not occurrences.  For example, in *Auto Club Group Insurance Co. v. Burchell*, 642 N.W.2d 406 (Mich. Ct. App. 2001), the Michigan Court of Appeals wrote that an insured may not "have it both ways."  642 N.W.2d at 415.  That is, the insured's actions were *either* unforeseeable accidents *or* intentional actions taken in self-defense; they cannot be both.  *Id.*  The court reasoned that, although an insurance company does not have to indemnify the insured for actions taken in self-defense, the insured would also not be liable for damages.  *Id.* at 416.  Further, "[w]here neither outcome led to the duty of the insurer to pay on behalf of the insured," the court "refused to impose on the insurer a duty to defend."  *Id.* (quoting *Century Mut. Ins. Co. v. Paddock*, 425 N.W.2d 214,

---

[1] To be sure, Giannone's policy had an explicit exception to the exclusion for actions taken in self-defense, which was not present in *Harrington*.  We cite *Harrington* only to illustrate how the Michigan Supreme Court would analyze whether an action taken in self-defense is an "accident" under the definition of "occurrence."

217 (Mich. Ct. App. 1988)); *see also Smorch v. Auto Club Grp. Ins. Co.*, 445 N.W.2d 192, 193 (Mich. Ct. App. 1989) ("In a case where an insured is sued for tortious conduct and argues self-defense, there is no duty to defend.").

The upshot is that Ms. Mollicone's estate and Giannone are wrong to suggest it matters if Giannone was acting in self-defense. Michigan's lower courts have unambiguously held that self-defense claims are not covered occurrences and have declined to involve insurance companies in resulting tort proceedings. Accordingly, even if Giannone were validly acting in self-defense such that the events fall into the exception to his intentional-acts exclusion, his actions were not accidental. So, the occurrence provision still precludes coverage.

## CONCLUSION

In sum, Ms. Mollicone's death was a direct result of Giannone's foreseeable actions. Therefore, Ms. Mollicone's estate and Giannone cannot show that Giannone's actions fall under the policy's definition of an "occurrence." We affirm.

**NALBANDIAN, Circuit Judge, concurring.** I join the majority opinion in full. But I write separately to address the interplay between the personal liability coverage provision, the intended-acts exclusion, and the self-defense exception.

**I.**

Since insurance is not the most intuitive area of law, I start with some background. The insurance contract dictates an insurance policy's coverage. And insurance contracts are generally made up of three types of interrelated provisions. First, the coverage provisions that set out the general bounds of the insurer's liability by stating what type of incidents and casualties the policy covers. Second, the exclusions that preclude certain categories of incidents from coverage. And third, the exceptions that allow coverage for circumstances that might otherwise fall within the plain language of an exclusion.

In this case, the defendants' best argument is that the intended-acts exclusion and the self-defense exception in the Giannone policy must both mean something. Under Michigan law, the "primary goal" of interpreting an insurance contract "is to honor the intent of the parties." *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 456 (Mich. 2009) (quoting *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29 n.28 (Mich. 1994)). And the best evidence of the parties' intent is the agreed-upon terms of the contract. *Id.* at 457. So "[t]he language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase." *McGrath v. Allstate Ins. Co.*, 802 N.W.2d 619, 621 (Mich. Ct. App. 2010); *see also Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992). And the insurance contract's coverage provisions, exclusions, and exceptions cannot be walled-off from one another. They are constituent parts of the agreement between insurer and insured. Only through reading the agreement as a whole may a court honor the contracting parties' intent.

If an act of self-defense can never give rise to a covered "occurrence," it seems odd to include an intended-acts exclusion. Stranger still is the inclusion of an exception clarifying that this intended-acts exclusion would "not apply to bodily injury or property damage resulting from the use of reasonable force to protect persons or property." R.1-2, Ins. Pol'y, p.25, PageID 51. This language would be pointless if acts of self-defense were categorically excluded by the definition of "occurrence" in the coverage provision. And so concluding that self-defense can never constitute an occurrence would conflict with the rule that "courts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp*, 663 N.W. at 453.

This all invites the question of how the word "occurrence" should be understood when the plain language shows that the parties meant for the policy to cover at least some intentional actions taken in self-defense. As far as I can tell, the Michigan courts have not yet grappled with this problem. Cases such as *Auto Club Group Insurance Co. v. Burchell* might come close. 642 N.W.2d 406 (Mich. Ct. App. 2001). But the policy there didn't have a self-defense exception and so only answered the first-order problem of whether actions taken in self-defense were intentional under an intended-acts exclusion. The Michigan Court of Appeals held that they were, noting that "no exception to the exclusion should be made for self-defense where the plain language provides no exception." *Id.* at 487; *see also Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 842 (Mich. 1997) (refusing "to create a self-defense exception to the intentional-act exclusion" where "the plain wording of the exclusion" provided none). But here the plain language of Giannone's policy contains the exact exception contemplated by that case. So applying *Burchell* without considering the impact of this self-defense exception would conflict with the reasoning underlying that decision.

## II.

Still, I agree with the majority opinion that we should affirm the district court.  On these facts, the claimed act of self-defense doesn't constitute an "occurrence" under Michigan law.  But our holding should not be read as stating that intentional actions taken in self-defense can never give rise to an "occurrence" that would be covered under similar policy language.

After all, the Michigan courts have made clear that an accident can result from an insured's intentional action.  *See Allstate Ins. Co. v. McCarn*, 645 N.W.2d 20, 23 (Mich. 2002).  The problem arises only when the insured intended "both the act and the consequences" or when "the intended act created a direct risk of harm from which the consequences should reasonably have been expected by the insured."  *Id.*  And as ably explained by the majority opinion, the intended act of shooting at an occupied car—even in self-defense—creates a direct risk of harm to the car's occupants.  Under these circumstances, the consequences of this intended act would not be an accident and so could not be an occurrence under the policy's coverage provision.  And Michigan law dictates that we affirm the district court's declaration that State Farm had no duty to indemnify or defend in this case.

Yet one could see a situation in which an intentional act taken in self-defense could give rise to an occurrence under this policy language.  For instance, a man acting reasonably in self-defense fires a warning shot at an aggressor who is threatening his life.  But the bullet strikes a third person across the street that the insured didn't see and had no reason to suspect was in the line of fire.  This would likely be covered.  Why?  Because even though the act of firing the gun was an intentional act, hitting the third person was not the shooter's intended result.  Nor was it a

reasonably foreseeable result of the intended act.[1]  After all, "the question is not whether a *reasonable person* would have expected the consequences, but whether the *insured* reasonably should have expected the consequences" based on his understanding of the circumstances.[2] *McCarn*, 645 N.W. at 23.

So that unintended bodily injury would be an accident, making it a covered "occurrence" under the policy.  The next question would be whether the intended-acts exclusion from the policy would preclude coverage.  And while the act of shooting the gun would be an intentional act, the self-defense exception to the intentional act exclusion would apply so long as the bodily injury resulted "from the use of reasonable force to protect persons or property."  R.1-2, Ins. Pol'y, p.25, PageID 51.

This hypothetical shows that the self-defense exception is not mere surplusage (though it's hard to imagine it applying often).  Under this policy language, an insured could run the gauntlet and be covered for actions taken in self-defense.  So even though this language doesn't change the outcome in Giannone's case, it would be a mistake to ignore it completely.  After all, not all

---

[1] This is distinguishable from Giannone's shooting of Kimberly Mollicone.  While Giannone claims that he didn't intend to hit her, he did intend to fire bullets at an occupied vehicle.  From his perspective, it was reasonably foreseeable that shooting at the vehicle might injure or kill its other occupants—even if his primary motivation for shooting was to return fire at Mr. Mollicone who was still shooting out of his passenger-side window.

[2] Of course, there will be some debate at the margins about what is reasonably foreseeable for each insured.  Some might argue that anytime someone fires a gun it is reasonably foreseeable that the shot might miss and hit something besides the intended target.  But this would amount to something close to strict liability.  And the Michigan Supreme Court has made clear that just "because, in retrospect, an insurer is able to identify" a causal connection between an objectively risky act and the consequence doesn't make it not an accident. *Allstate Ins. Co. v. McCarn*, 645 N.W.2d 20, 26 (Mich. 2002).  For example, a traffic accident is still an accident even if it "might be traceable to 'objectively unreasonable' conduct by the insured, i.e. driving too fast on a highway." *Id.*  And so if the insured has the reasonable, subjective belief that shooting the gun will not create a direct risk of harm to others, the mere fact that his intentional act ultimately caused an injury doesn't prevent that result from being an accident.

insurance contracts include a self-defense exception. In fact, such an exception seems rare. And so it's reasonable to assume that State Farm included this language in the policy they sold to Giannone because they thought it gave them a competitive advantage, helping their policy stand out in the crowded field of homeowners insurance. Including an exception to the intentional-acts exclusion goes against the insurer's financial interest since it broadens the scope of potential liability under the policy. Thus, the only reason a rational insurer would offer a self-defense exception is to help it sell more policies.

It would be odd to allow an insurer to reap the competitive benefits of using this policy language if the company could always retreat behind the "occurrence" argument when the bill comes due. And so I believe that an action taken in self-defense can result in an accident—and thus a covered occurrence—even if the shooting here did not.

\* \* \*

Because Kimberly Mollicone's death was the direct and foreseeable result of Giannone's actions, there is no coverage under the policy. But our holding doesn't foreclose the possibility that other actions taken in self-defense would result in a covered occurrence under this policy language.