Cavanagh, J.
This is an action for declaratory judgment. Allstate Insurance Company seeks a determination of its obligation to indemnify its insureds in connection with an underlying wrongful death suit stemming from the shooting death of Kevin LaBelle.
*279 We hold that the shooting death of Kevin LaBelle was “accidental” and, thus, an “occurrence” as defined in the insurance policy at issue. Consequently, an “occurrence” gives rise to Allstate’s liability under the policy. Therefore, we reverse the decision of the Court of Appeals and remand to the Court of Appeals to decide whether the criminal acts exception in this policy excludes coverage.
I
This case arises out of the death of sixteen-year-old Kevin LaBelle on December 15, 1995, at the home of defendants Ernest and Patricia McCarn, where their grandson, then sixteen-year-old defendant Robert McCarn, also resided. On that day, Robert removed from under Ernest’s bed a shotgun Robert’s father had given him the year before. The gun was always stored under Ernest’s bed and was not normally loaded. Both Robert and Kevin handled the gun, which Robert believed to be unloaded. When Robert was handling the gun, he pointed it at Kevin’s face from approximately one foot away. Robert pulled back the hammer and pulled the trigger and the gun fired, killing Kevin.
Nancy LaBelle, representing Kevin’s estate, brought the underlying action against Robert and his grandparents, Ernest and Patricia McCarn, who had a homeowners insurance policy with plaintiff Allstate. Allstate brought the present action, seeking a declaratory judgment that it had no duty to indemnify defendants Robert, Ernest, or Patricia McCarn.
Plaintiff and defendants moved for summary disposition in the declaratory action. The trial court *280 granted defendants’ motions for summary disposition and denied plaintiff’s, holding that the events constituted an “occurrence” within the meaning of Allstate’s policy. The trial court also held that Robert McCam’s conduct was not intentional or criminal within the meaning of Allstate’s policy.
Allstate appealed to the Court of Appeals, which reversed the trial court in an unpublished opinion.[1] The Court attempted to apply our recent decisions in Nabozny v Burkhardt[2] and Frankenmuth Mut Ins Co v Masters[3] and concluded that “Robert’s intentional actions created a direct risk of harm that precludes coverage.”
Defendant LaBelle sought leave to appeal. We granted leave.
II
In determining whether Allstate must indemnify the McCams, we examine the language of the insurance policies and interpret their terms pursuant to well-established Michigan principles of construction. Masters at 111.
An insurance policy must be enforced in accordance with its terms. Id. If not defined in the policy, however, we will interpret the terms of the policy in accordance with their “commonly used meaning.” Id. at 112, 114.
The McCams’ homeowners insurance policy provides in pertinent part:
*281 Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.
According to the plain meaning of the policy, liability coverage for damages arises from an “occurrence.” The term “occurrence” is defined in the insurance policy as: “an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.”
Our task, therefore, is to determine whether the case before us involved an “accident.”
III
In the instant case, the policy defines an occurrence as an accident, but does not define what constitutes an accident. In similar cases where the respective policies defined an occurrence as an accident, without defining accident, we have examined the common meaning of the term. In such cases, we have repeatedly stated that “ ‘an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated and not naturally to be expected.’ ” Masters at 114, quoting Arco Ind Corp v American Motorists Ins Co, 448 Mich 395, 404-405; 531 NW2d 168 (1995) (opinion of Mallett, J.); Auto Club Group Ins Co v Marzonie, 447 Mich 624, 631; 527 NW2d 760 (1994); Metropolitan Property & Liability Ins Co v DiCicco, 432 Mich 656, 670; 443 NW2d 734 (1989).
*282 Accidents axe evaluated from the standpoint of the insured, not the injured party. Masters at 114, n 6. In Masters, we held that “the appropriate focus of the term ‘accident’ must be on both ‘the injury-causing act or event and its relation to the resulting property damage or personal injury.’ ” Id. at 115, quoting Marzonie at 648 (Griffin, J., concurring) (emphasis in original).
We also stated that “ ‘an insured need not act unintentionally’ in order for the act to constitute an ‘accident’ and therefore an ‘occurrence.’ ” Id.
Where an insured does act intentionally, “a problem arises ‘in attempting to distinguish between intentional acts that can be classified as “accidents” and those that cannot.’ ” Id.
In Masters at 115-116, we applied the following standard from Justice Griffin’s concurrence in Marzonie at 648-649.
[A] determination must be made whether the consequences of the insured’s intentional act “either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured’s actions. When an insured acts intending to cause property damage or personal injury, liability coverage should be denied, irrespective of whether the resulting injury is different from the injury intended. Similarly, . . . when an insured’s intentional actions create a direct risk of harm, there can be no liability coverage for any resulting damage or injury, despite the lack of an actual intent to damage or injure.” [Emphasis in original.]
What this essentially boils down to is that, if both the act and the consequences were intended by the insured, the act does not constitute an accident. On the other hand, if the act was intended by the *283 insured, but the consequences were not, the act does constitute an accident, unless the intended act created a direct risk of harm from which the consequences should reasonably have been expected by the insured.
As to the perspective from which the analysis should be made, the question is not whether a reasonable person would have expected the consequences, but whether the insured reasonably should have expected the consequences. Accordingly, an objective foreseeability test should not be used in the present context. Rather, the analysis must be that, to avoid coverage, the consequence of the intended act, which created a direct risk of harm, reasonably should have been expected by the insured.
The policy language dictates whether a subjective or objective standard is to be used.[4] However, the policy language here does not indicate whether a subjective or objective standard is to be used. Because “[t]he definition of accident should be framed from the standpoint of the insured . . . ,” Masters at 114, and because, where there is doubt, the policy should be construed in favor of the insured, id. at 111, we conclude that a subjective standard should be used here. Further, in Masters, this Court, faced with similar policy language, concluded that there is no coverage where the insured intended his action, and the consequences of this intended action “either were *284 intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured’s actions.” Id. at 115.
In our judgment, the language “by the insured” modifies both “intended” and “expected.” Therefore, there is no coverage where the consequences of the insured’s act were either “intended by the insured” or “reasonably should have been expected by the insured.” The language, “by the insured,” indicates that a subjective standard should be used here. Fire Ins Exchange v Diehl, 450 Mich 678, 685; 545 NW2d 602 (1996). Although, “[n]egligence alone is not sufficient to prevent the death from being an accident within the meaning of the policy,” Collins v Nationwide Life Ins Co, 409 Mich 271, 277; 294 NW2d 194 (1980), when the acts of the insured rise to the level of a “direct risk of harm intentionally created”—a level of culpability only slightly lower than intentionally acting to produce an intended harm—coverage is precluded, where the insured reasonably should have expected the harm, as the situation is virtually indistinguishable from intentionally causing the harm.
Further, the “direct risk of harm” must have been “intentionally created by the insured’s actions.” This language shows that the Masters test is not objective. On the contrary, the inquiry is entirely subjective-did the insured intentionally create a direct risk of harm? In this case, there was no intentional creation of a direct risk of harm because of the undisputed evidence that Robert McCam believed he was pulling the trigger of an unloaded gun.
The dissent is incorrect in concluding that this Court adopted an objective test in Masters. As previ *285 ously stated, in our judgment, the language “by the insured” modifies both “intended” and “expected,” indicating a subjective test. A subjective test is not only consistent with Masters and Nabozny, it is the required test, based on the language the Masters Court adopted from Marzonie. Accordingly, we are not abandoning the rule established in Masters, as the dissent contends; rather, we are simply adhering to this rule. See post at 298, n 6.
Applying these principles to the present case, viewed from the standpoint of the insured, we hold that Kevin LaBelle’s death was an “accident,” thus an “occurrence,” covered under the insurance policy. We agree with plaintiff that Robert intended to point the gun at Kevin and pull the trigger. However, Robert believed the gun was not loaded. Robert had no intention of firing a loaded weapon. No bodily injury would have been caused by Robert’s intended act of pulling the trigger of an unloaded gun.
The dissent states:
What is the direct risk of harm consonant with pulling the trigger of a firearm? The obvious risk is that the weapon, if loaded, might discharge and cause an injury. In my view, the evidence adduced at the summary disposition stage warrants the conclusion that the insured should have reasonably expected the consequences of his intentional act. [Post at 301.]
We agree that this case does not present a question of fact. The fact that Robert believed the gun was unloaded is a matter about which there is no genuine issue of material fact. This is because there is nothing in the record to reasonably support a conclusion that, contrary to Robert’s testimony that he believed the gun was unloaded, he consciously believed the gun *286 was loaded, or even contemplated that there was any possibility that it was loaded when he pulled the trigger. Even plaintiff, the insurer, acknowledged that Robert believed the firearm was unloaded when he pulled the trigger:
McCam’s subjective, although erroneous, belief that the firearm was not loaded does not alter the fact that he picked up the gun, pointed it, pulled back the hammer and pulled the trigger.
Further, Robert made statements at his deposition to support his belief that the gun was not loaded: Robert and Kevin were “horsing around” with the gun as they had done on previous occasions; Robert was surprised when the gun actually fired; and, immediately following the discharge of the gun, Robert called 911. Thus, there is nothing to reasonably indicate that Robert entertained knowledge that the gun might have been loaded.
In short, it would be speculation to suggest that Robert intentionally shot his friend or was conscious of a nontheoretical possibility that a shell was in the gun when he pulled the trigger. Clearly, such speculation cannot suffice to establish even a genuine issue of material fact, let alone to conclude that Robert’s intended act of pulling the trigger of an unloaded gun intentionally created a direct risk of harm.
The dissent goes to great lengths to show that under an objective standard, the insured should have reasonably expected the consequences. We simply cannot agree because the language of the test adopted in Masters requires us to subjectively analyze what Robert thought when he pulled the trigger. Rob *287 ert thought he was pulling the trigger of an Reloaded gun.[5]
Robert McCarn may have been negligent in failing to see if the gun was loaded before he pulled the trigger, particularly because he was the last person to use the gun weeks earlier for target practice. However, the issue of negligence is not before us. As we stated in Collins, the negligence of the insured in acting as he did is not enough to prevent an incident from being an accident if the consequence of the action (e.g., shot coming from a gun) should not have reasonably been expected by the insured.[6]
While it may be considered quite obvious that Robert’s conduct was careless and foolish, it was negligence that simply did not rise to the level that he *288 should have expected to result in harm. Otherwise, liability insurance coverage for negligence would seem to become illusory. We must be careful not to take the expectation of harm test so far that we eviscerate the ability of parties to insure against their own negligence.[7]
The problem, as we see it, with the dissent’s opinion is that it undermines the ability of insureds to protect themselves against their own foolish or negligent acts. If courts are to review the acts of insureds for “objective reasonableness,” as the dissent proposes, the very purpose of insurance would be compromised as insureds would find it increasingly difficult to recover on claims arising from injuries set in motion by foolhardy conduct on their own part or on the part of their families. However, the impetus for insurance is not merely, or even principally, to insure oneself for well thought out and reasoned actions that go wrong, but to insure oneself for foolish or negligent actions that go wrong. Indeed, it is obviously the latter that are more likely to go astray and to precipitate the desire for insurance. Under the dissent’s approach, however, only the former actions would be clearly covered “accidents,” or, at least, would clearly avoid disputes over coverage with insurers.
*289 Further, under the dissent’s approach, only occurrences that were truly unexplainable would be covered “accidents.” For, in retrospect, a sufficiently diligent insurer could almost always determine the physical cause of an accident, tracing it back to some prior conduct by the insured that should have been performed differently. Actions have consequences, and with sufficient effort, a connection between an occurrence and a prior action on the part of the insured can invariably be identified. However, merely because, in retrospect, an insurer is able to identify such a connection, does not mean that what took place was not an “accident.” If one is driving too fast on a highway, not intending to but nonetheless causing an accident, it can hardly be denied that what has resulted is an accident despite the fact that it might be traceable to “objectively unreasonable” conduct by the insured, i.e. driving too fast on a highway.
IV
Contrary to what our dissenting colleagues state, we are not abandoning or calling into question the rule from Masters in any way. The facts of this case are distinguishable from Masters and Nabozny, where we held that specific acts failed to qualify as accidents under the respective insurance policies. In Nabozny, the plaintiff broke his ankle during a fight when the insured tripped him. The insured, while not intending to break the plaintiff’s ankle, did intend to fight with him. This and the effort to trip during the fight was the creation of a direct risk of physical harm that should have caused the insured to reasonably expect the consequences that ensued. Thus, we concluded that the injury was not an accident.
*290 In Masters, the insured and his son intentionally set a fire, intending to cause damage in their clothing store only, but that ultimately destroyed not just their store, but also a neighboring building. We held that the applicable insurance policy, which precluded coverage for intentional acts, did not provide coverage under the circumstances. Our reason was that, when the insured acted by starting a fire, it is irrelevant that the consequence, which was burning property, was different in magnitude from that intended.
The difference between this case and Nabozny and Masters, however, is that here, while the act was intended, the result was not.[8] Thus, unlike in Nabozny, Robert should not have reasonably expected the consequences that ensued from his act because his intended act was merely to pull the trigger of an unloaded gun. Similarly, unlike Masters, where the consequence of the act was intended, here the consequence—shot leaving the gun—was not intended. Furthermore, even if one used some variation on a foreseeability test, no bodily harm could have been foreseen from Robert’s intended act, because he intended to pull the trigger of an unloaded gun, and, thus, it was not foreseeable, indeed it was *291 impossible, under the facts as Robert believed them to be, that shot would be discharged. Therefore, we cannot say Robert should have expected the unfortunate consequences of his act. The discharge of the shot was an accident and entitled to coverage unless a policy exclusion applies.
V
Allstate maintains that Robert McCam’s actions constitute a criminal act that, under the policy’s criminal acts exclusion, negates Allstate’s duty to indemnify the insureds. The Court of Appeals did not reach this issue because it concluded that Robert’s actions created a direct risk of harm that precluded coverage. We remand this case to the Court of Appeals to decide this issue.
VI
We hold today that Kevin LaBelle’s death was an “accident,” and thus an “occurrence,” covered under the policy because Robert did not intend or reasonably expect that his actions, pointing and pulling a trigger of an unloaded gun, would cause any bodily injury to Kevin LaBelle. We reverse the judgment of the Court of Appeals and remand to the Court of Appeals to decide whether the criminal-acts exception in this policy excludes coverage.
Kelly, Taylor, and Markman, JJ., concurred with Cavanagh, J.

 Issued October 3, 2000 (Docket No. 213041).

 461 Mich 471; 606 NW2d 639 (2000).

 460 Mich 105; 595 NW2d 832 (1999).

 For example, a policy that excludes coverage of bodily injury that is expected “from the standpoint of the insured,” dictates a subjective standard, Metropolitan Property & Liability Ins Co v DiCicco, companion case to Allstate Ins Co v Freeman, 432 Mich 656, 709; 443 NW2d 734 (1989), just as a policy that covers bodily injury not expected “by the insured,” also dictates a subjective standard, Fire Ins Exchange v Diehl, 450 Mich 678, 685; 545 NW2d 602 (1996).

 The dissent asserts that this opinion makes “the insured’s subjective belief regarding the status of the gun definitive.” Post at 300. While this is not inaccurate, this should not be confused with making the insured’s own assertions of his subjective belief definitive. A subjective test does not require courts to simply accept uncritically the insured’s own assertions regarding his subjective belief. Instead, courts must examine the totality of the circumstances, including the reasonableness or credibility of the insured’s assertions, evidence of “other acts,” evidence concerning the faculties or the maturity of the insured, evidence concerning relationships between an insured and a victim of an h\jmy, and so forth. In this case, there is simply no evidence to suggest that the insured intended shot to be discharged from this gun when he pulled its trigger.
Further, that the insured can now logically explain how the accidental shooting most likely occurred, i.e., that the insured forgot to unload the gun the last time he used it, does not transform an otherwise accidental shooting into an intentional creation of a direct risk of harm. Merely because one can explain, after the fact, how an insured’s actions inexorably led to certain consequences does not mean that that insured reasonably should have expected those consequences. If that were true, the only covered occurrences would be inexplicable ones.

 The dissent asserts that Robert’s prior use of the gun should be considered in deciding whether Robert should have reasonably anticipated the harm caused. However, at most, the prior use of the gun would establish Robert was negligent. In Michigan, the test is not whether the insured was negligent, but whether the insured should have reasonably expected the consequence.

 The dissent refers to Robert’s nolo contendere plea to manslaughter. Post at 293. However, given that such a no-contest plea does not have the effect of an admission for any other proceeding than the one in which it is entered, MCR 2.111(E)(3), that plea has no legal relevance to this case. Regardless, even if we assume Robert’s guilt of manslaughter in connection with this case, that does not change the fact that the shooting was an accident. Similarly, the dissent refers to Robert having smoked marijuana, post at 293, n 3, but this has no serious relevance to the issues at hand. Smoking marijuana did not affect the establishment of intent by Robert.

 The dissent contends that “[t]here is no such ‘difference’ among these three cases. Rather, in both Masters and Nabozny, the insureds made precisely the same claim as presented here—that they did not intend the result of their deliberate acts.” Post at 297 (emphasis in original). What the dissent is missing is that the insureds in Masters and Nabozny did intend the results of their deliberate acts—the fire and the tripping; they just did not intend the magnitude of those results—the burning down of the neighboring building and the broken ankle. So, again, this case is different from Masters and Nabozny because there the insureds did intend the results of their deliberate acts, while here the insured did not intend the result—the firing of shot—of his deliberate act—the shooting of a gun that he believed to be unloaded.