# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SUSHMA SCHREE HARRIS,

        Defendant-Appellant.

UNPUBLISHED
November 17, 2015

No. 322568
Saginaw County Circuit Court
LC No. 13-039071-FH

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right from her conviction of assault with a dangerous weapon (felonious assault) under MCL 750.82(1). She was sentenced to 18 months' probation. For the reasons set forth in this opinion we affirm the conviction and sentence of defendant.

## I. BACKGROUND

The record reveals this case arose from a card game that began on July 6, 2013 and went into the early morning hours of July 7, 2013. On those dates, both defendant and the victim, Anita Epperson, were at the home of Yvonne Helton in Buena Vista Township for a card game. Testimony revealed that defendant and the victim had attended card games played at various locations in the past, with the "host" collecting a "cut" for the games. Epperson alleged that defendant had borrowed money from her at a prior game. In the early morning hours of July 7, 2013, Epperson and defendant got into an argument over the alleged prior loan. According to the testimony presented at trial, defendant and Epperson came into contact with one another, initially according to defendant, to prevent Epperson from receiving a card deal. Testimony revealed that defendant placed herself between Epperson and the other card player seated on the same side of the table. Testimony then revealed that Epperson got up and pushed defendant and told her, by varying adverbs and syntax, to "get off me." When Epperson did so, defendant went backward, stumbling, and either picked up a box cutter or reached into her shirt to get a box cutter. Testimony indicated that defendant continued to back away, swinging her arm, as Epperson advanced toward her. At some point, Epperson picked up a metal chair and swung it toward defendant. Although defendant testified that Epperson picked up the chair and advanced toward her before she began swinging the box cutter at her, three witnesses testified that defendant began swinging the box cutter at Epperson before she picked up the chair. Defendant testified

-1-

that she left the house when "[a] couple of the ladies grabbed the chair from Anita [Epperson]. I ran up the stairs, out the door." Epperson was cut during the altercation and went to the hospital for medical attention.

During jury selection, after the prosecutor and the defense attorney had questioned potential jurors, there was a bench conference after which the trial court questioned two potential jurors about their dates of birth. Following this line of questioning, the trial court excused six potential jurors for cause. After defense counsel's third peremptory, a juror moved into the empty seat in the jury box after which the assistant prosecutor exercised his first peremptory challenge.

Following opening statements, the trial court excused the jury for a lunch break and the following conversation occurred on the record:

> [PROSECUTOR]: Yes. Could the record reflect that you called us to the bench and asked us to state our challenges for cause? I did so, [defense counsel] had his opportunity, and I believe that all the challenges for cause that you recited thereafter were agreed to by both counsel.
>
> THE COURT: All right. [Defense counsel], you agreed, correct?
>
> [DEFENSE COUNSEL]: I would agree with that.
>
> THE COURT: All right. So, yeah, there were some challenges that – where somebody had convictions and other issues that were brought out during voir dire. So all of the challenges for cause were agreed upon, agreed upon, and –
>
> [PROSECUTOR]: And one of the challenges that – well, I made two challenges where I asked the Court to inquire about dates of birth, because I had criminal conviction information –
>
> THE COURT: Right.
>
> [PROSECUTOR]: – that would have been grounds for cause for challenge under 2.511. And you did inquire.
>
> One of them, he was the person, so he was let go.
>
> The second person, he was in the front row, Mr. Davis. There was a whole list of convictions for him, but when you asked him his date of birth it was obviously not him. So he wasn't – you didn't challenge him for cause, and that was fine.
>
> However, because I was told at my weeding – meeting that I have every Monday with our fellow assistants, that this was a person we thought had some problems, I asked that assistant to come in here – and this wouldn't have shown up on the record – Mr. Trice, to say, you said this person might be a problem, but he doesn't match the date of birth. He says this is the father of that guy.

-2-

And I wanted the record to be – be clear, I wasn't trying to get rid of a juror improperly, I just thought he was the person. And then Mr. Trice said, no, he's the father of the person with all these criminal convictions. And I may not – not need to put that on the record, but since I told you something at the bench that didn't turn out to be correct, I wanted to correct that.

THE COURT: All right.

[DEFENSE COUNSEL]: Well, Your Honor, I think [the prosecutor] is concerned about kicking the last African member – American member of the panel off the jury with a peremptory challenge with no real cause, and it does cause me some concern and distress. He was not the person that was convicted of the crimes. I don't know how far down the line we go in punishing or – or – or putting the crimes of our relatives on other people, but I'm confident that we've got a good jury panel, and I'm not going to raise an issue over one member.

Defendant was tried and convicted as indicated above. This appeal then ensued.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant initially argues that she was denied the effective assistance of counsel when her attorney failed to object to the assistant prosecutor's use of a peremptory challenge to exclude the sole African American from the jury. Though not raised by the parties, when defense counsel agreed to the jury panel, defendant waived her right to challenge the make-up of the jury. In *People v Carter*, 462 Mich 206, 215; 612 NW 2d 144 (2000), our Supreme Court, citing *People v Carines*, 460 Mich 750, 72-765; 597 NW2d 130 (1999) held:

Waiver has been defined as the intentional relinquishment or abandonment of a known right. It differs from forfeiture, which has been explained as the failure to make the timely assertion of a right. "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *United States v Griffin*, 84 F3d 912, 924 (CA 7, 1996). (Internal citations omitted).

In this case, on two separate occasions, defense counsel indicated he was satisfied with the jury. As quoted above, at the conclusion of defense counsel's remarks he stated, ". . . but I'm confident that we've got a good jury panel, and I'm not going to raise an issue over one member." Accordingly, this Court could simply find that defendant has waived her right to appellate review of this issue. However, because defendant frames the issue as one of ineffective assistance of counsel, we proceed to her arguments on their merits.

Defendant argues on appeal that her trial counsel was ineffective for failing to raise a challenge under *Batson v Kentucky*, 476 US 79, 86-87; 106 S Ct 1712; 90 L Ed 2d 69 (1986) to the assistant prosecutor's sole preemptory challenge. In *Batson*, the United States Supreme Court held that use of peremptory challenges during jury selection to exclude and purposefully discriminate against jurors of the same race as the defendant violates the Equal Protection Clause of the Fourteenth Amendment. In *Powers v Ohio*, 499 US 400, 409; 111 S Ct 1364; 113 L Ed 2d

-3-

411 (1991), the United States Supreme Court modified its view, holding "that the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race," regardless of the race of the defendant. The defendant must make a timely objection, known as a *Batson* challenge, to a discriminatory exercise of a peremptory challenge, and the defendant initially bears the burden of making a prima facie case of purposeful discrimination. *Batson*, 476 US at 93. Under *Batson*, a prima facie case consists of a showing that (1) the defendant "is a member of a cognizable racial group," (2) "the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race," and (3) "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.* at 96. Once a prima facie case of purposeful discrimination is shown, the burden switches to the prosecution to give a race-neutral explanation for the peremptory challenge. *Id.* at 97. At this step, "the issue is whether the . . . explanation is facially valid as a matter of law. 'A neutral explanation [is] based on something other than the race of the juror . . . Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *People v Knight*, 473 Mich 324, 337; 701 NW2d 715 (2005). After a race neutral reason is proffered, the trial court must determine whether the defendant proved purposeful discrimination. *Id.*

In *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court held that the purpose of the Sixth Amendment right to effective assistance of counsel is "to ensure a fair trial" and stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." The *Strickland* Court held that a "conviction . . . result[s] from a breakdown in the adversary process that renders the result unreliable" due to ineffective assistance of counsel only when two conditions are met: (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant. *Id.* at 694.. Defendant must also show (3) that the resultant proceedings were fundamentally unfair or unreliable. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Additionally, this Court, in *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012), citing *People v Pickens*, 466 Mich 298, 312; 521 NW2d 797 (1994), held that: "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different."

In *Strickland*, 466 US at 674, the United States Supreme Court articulated that an ineffectiveness inquiry need not begin with counsel's performance before addressing prejudice to the defense. It explained:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness

-4-

claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result. [*Id.*]

Hence, we proceed with our analysis of this issue by presuming that trial counsel was ineffective for failing to bring a *Batson* challenge. We also presume, as the *Strickland* Court instructed, that the jury acted lawfully and impartially in coming to its verdict; the fact that the subject individual was excused did not result in the denial of an impartial jury or of a fair trial. *Strickland*, 466 US at 695.

On appeal, the entirety of defendant's argument as to prejudice is as follows:

> Defendant-Appellant Harris suffered prejudice as a result of trial counsel's objectively unreasonable decision to not raise a *Batson* challenge. She was denied her Sixth Amendment right to an impartial jury. Because trial counsel rendered ineffective assistance, Defendant-Appellant is entitled to a new trial.

In *People v Schmacher*, 276 Mich App 165, 178; 740 NW2d 534 (2008), this Court held: "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." Accordingly, given the cursory treatment of the prejudice prong of *Strickland*, this Court may deem this issue abandoned. "Defendant's failure to cite any supporting legal authority constitutes an abandonment of this issue." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999). See also, *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). Despite defendant's abandonment of the issue on appeal, we consider whether the record produces sufficient evidence that would satisfy the prejudice standards set forth in *Strickland* and its progeny. We conclude no evidence exists in this record. From this record we can glean no evidence that would cause this Court to question the fairness or integrity of the proceedings. Additionally, we cannot glean any evidence that failure to bring a *Batson* challenge had any effect on the outcome of the proceeding. Hence, examination of the record in this case leads us to conclude that defendant cannot prove that there is a reasonable probability that defense counsel's failure to bring a *Batson* challenge prejudiced defendant. *Strickland*, 466 US at 694. Accordingly, we conclude that defendant is not entitled to relief on this issue

## III. INSUFFICIENCY OF THE EVIDENCE

Defendant also claims that the evidence was insufficient to show beyond a reasonable doubt that she was not acting in lawful self-defense. At trial, "[w]hen the defendant asserts a claim of self-defense, the burden is on the prosecution to show beyond a reasonable doubt that the defendant did not act in self-defense[, which] is a question of fact for the jury to determine."

The trial court's instructions to the jury were consistent with CJI2d 7.15 and 7.16:

THE COURT: You should consider all the evidence and use the following rules to decide whether the defendant acted in lawful self-defense. Remember to judge the defendant's conduct according to how the circumstances appeared to her at the time she acted.

\* \* \*

First, at the time she acted, the defendant must have honestly and reasonably believed that she was in danger of being seriously injured.

\* \* \*

Second, a person may not kill or seriously injure another person just to protect herself against what seems like a threat of only minor injury. The defendant must have been afraid of serious physical injury.

\* \* \*

Third, at the time she acted, the defendant must have honestly and reasonably believed that what she did was immediately necessary. Under the law a person may only use as much force as she thinks is necessary at the time to protect herself.

\* \* \*

A person can use deadly force in self-defense only where it is necessary to do so. If the defendant could have safely retreated but did not do so, you may consider that fact in deciding whether the defendant honestly and reasonably believed she needed to use deadly force in self-defense. However, a person is never required to retreat if attacked in her own home, nor if the person reasonably believes that an attacker is about to use a deadly weapon, nor if the person is subject to a sudden fierce and violent attack.

Viewing the witnesses' testimony in the light most favorable to the prosecution, the following narrative emerges: Epperson began a verbal disagreement with defendant over whether defendant owed her money. Defendant stood between Epperson and another woman seated at the card table, catching Epperson's cards, and touching Epperson's side. When Epperson pushed defendant away and told her to get off, defendant grabbed a box cutter and began swinging it at Epperson. Three witnesses testified that Epperson picked up a chair and began swinging it after defendant began swinging the box cutter.[1] When asked why she picked up the chair, Epperson stated, "I was defending myself. I didn't have no – I didn't have no weapon or nothing." When asked whether she would have picked up the chair if defendant had not had a blade, Epperson stated, "No doubt, I wouldn't have never thought to pick up the chair, no."

---

[1] We are mindful that defendant testified that she produced the box cutter *after* Epperson picked up the chair. However, it is the province of the jury to determine questions of fact and assess the credibility of witnesses. *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

Based on this testimony, a reasonable jury could have rationally concluded that defendant did not hold an honest and reasonable belief that she was in danger of being seriously injured or that use of a blade was immediately necessary to protect herself, that defendant initiated physical contact with Epperson when she stood over her, touching her side, that defendant used the box cutter and injured Epperson even though Epperson only used a small amount of force when she pushed defendant away, that defendant was only in danger of sustaining minor injury and used more force than she honestly or reasonably thought was necessary to protect herself, and that defendant had a reasonable and safe means of retreat given the uncontradicted testimony that she ran up the stairs and out of the house after Epperson was cut. Although the witnesses' testimony was contradictory at points, as previously stated it is an axiom of law, that "[i]t is the province of the jury to determine questions of fact and assess the credibility of witnesses." *Lemmon*, 456 Mich at 637. "In reviewing a sufficiency argument, this Court must not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses." *People v Stiller*, 242 Mich App 38, 42; 617 NW2d 697 (2000) (citation omitted). Thus, there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant was not entitled to act in self-defense.

Affirmed.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Jane M. Beckering