*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

DOUGLAS JAMES CRYSTAL, JR.,

   Defendant-Appellant

UNPUBLISHED
March 24, 2020

No. 346248
Kent Circuit Court
LC No. 17-010774-FH

Before: MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Defendant pleaded no contest to several charges arising from a fatal accident caused by his intoxication and reckless driving. The court departed upward from the recommended minimum sentencing guidelines range of 43 to 86 months to sentence defendant to a minimum sentence of 10 years (120 months), a departure of nearly three years. The trial court neither referenced any specific sentencing factor nor determined that a factor inadequately addressed the circumstances in this case. The court justified the departure sentence by repeatedly emphasizing that defendant intended the horrific results of the accident, a fact unsupported in the record. Accordingly, we affirm defendant's convictions, vacate his sentences, and remand for resentencing before a different judge.

## I. BACKGROUND

On the afternoon of September 15, 2017, defendant attended a golf outing for work and consumed 8.5 to 9.5 alcoholic drinks. Defendant then drove himself home at the reckless speed of 91 mph. Defendant approached an intersection and slowed to 60 mph, but did not stop at the stop sign. He t-boned the vehicle crossing through the intersection, killing the driver and severely and permanently injuring her five-year-old twin sons who rode in the backseat. Defendant fled the scene on foot and police could not locate him until he returned home the following morning. In exchange for the dismissal of several charges against him, defendant pleaded no contest to failure to stop at the scene of an accident when at fault and that resulted in death, MCL 257.617(3), operating a vehicle while intoxicated causing death, MCL 257.625(4)(a), and operating a vehicle while intoxicated causing serious injury, MCL 257.625(5)(a).

Before sentencing, the Department of Corrections scored defendant's offense and prior record variables. Defendant's total OV score of 130 points placed him in OV Level VI. His total PRV score of 20 points placed him in PRV Level C, giving him a minimum sentencing guidelines range of 43 to 86 months for his most serious offense. After hearing from members of the victims' family and defendant, the court explained its sentencing decision as follows:

Well, I am very familiar with the facts and circumstances of this. I . . . have read and reviewed all of the medical records. I've had numerous conversations with the attorneys involved in this and the Prosecutor involved in this.

You entered pleas, sir, to failing to stop at an accident causing death, which carries a maximum penalty of 15 years, as well as drunk driving causing death, which also carries a maximum penalty of 15 years, as well as drunk driving causing a serious injury which carries a maximum penalty of five years. You entered no contest pleas to those, because you have no memory of the accident - - or the incident, I should say. Not accident.

[Y]ou've had one prior jail sentence. You've been on probation a couple times. You're 36 years old. You really have no record other than some minor misdemeanors a while ago. You have no felonies; no juvenile court record.

This was a terrible situation where you went to a work-related event at a golf course, you started drinking. You had somewhere between eight and nine drinks. And then you ended up making a decision to drive home. . . . [F]ive seconds before the impact, you were driving at 90 miles an hour. You T-boned this other car. You killed this woman. You severely injured these twins.

I . . . understand, sir, from everything that I have read and reviewed, that you are a . . . married individual who has three small children, yourself. I believe boys that are 10, eight, and five. That you're active in your church. That you volunteered at . . . sports and coaching for kids. That you're a family man. That you really have no history of drinking and driving.

And one thing stood out to me as I was reading letters, not only from you, but a lot of your friends and family members, is that they kept relating this as an accident. This was not an accident under any . . . circumstances.

Sir, you did not accidentally fall down and drink six or eight drinks at the golf course. You didn't not [sic] accidentally fall down and get behind the wheel of a car. You did not accidentally put your key in and start that car and drive it. And you did not accidentally go 90 miles an hour and hit and kill . . . this woman and these two purely innocent little five-year-old boys, who were so seriously injured. This was your choice to drink and drive. And you made that decision and you have to live with the consequences of those actions.

And you have to look at what . . . your poor choices on that particular day have done. I mean, you've destroyed this one family. You've destroyed . . . these

two little innocent kindergarteners. And you've done this to your own family also. You've ripped apart your family and this community. This is just a horrific nightmare.

I have . . . been involved in cases for 33 years as an attorney. I've been 12 years on the bench. I've dealt with . . . over 200 murder or death cases. These are the most egregious injuries that I have ever seen. I mean, this was a loving woman, a mother of twins that you killed, and these poor little boys. I mean, do you realize what they are now, and what the situation is?

This one little boy . . . has severe traumatic brain injury. He's never going to be able to walk, talk, eat, feed himself or breath. He's in a wheelchair for the rest of his life. His retinas were torn in this accident. He can't even see. And what did this little boy do?

It was you that made a decision to drink and drive and cause this.

His brother has also some traumatic brain injury but not as severe. He's also had to have surgery on his mouth. And these little boys have no mother anymore, all because you decided to drink and drive.

There are Sentencing Guidelines for a judge to impose a minimum sentence. On this the Guidelines call for a minimum sentence between 43 and 86 months on the two 15-year maximums. And 12 to 14 months on the five-year maximum. That range of 43 to 86 months is somewhere for your minimum sentence to be between three years and seven months and seven years and two months. . . .

But, quite frankly, I don't believe those Guidelines take into effect the seriousness of the nature of the injuries, that you killed this person, and what you've done to these two little boys, as I've already articulated.

I am aware of *People v Tanner*, [387 Mich 683; 199 NW2d 202 (1972),] which says I can impose no more than two-thirds of a maximum sentence. Under this circumstance, that would be ten years.

I'm aware of *People v Lockridge*, [498 Mich 358; 870 NW2d 502 (2015),] that says that the Guidelines are not only advisable [sic] and I need to impose a reasonable sentence.

And I'm also aware of *People v Milbourn*, [435 Mich 630; 461 NW2d 1 (1990),] that I need to impose a proportionate sentence.

Sir, it is the sentence of this Court that you be committed to the Michigan Department of Corrections to serve a minimum of ten years to a maximum of 15 years on both of the 15-year felonies.

You'll serve three to five years with regards to this OUIL causing serious injury. By law those must be served concurrently. You're entitled to six days credit on that.

We granted defendant's delayed application for leave to appeal his upwardly departing sentences. *People v Crystal*, unpublished order of the Court of Appeals, entered December 27, 2018 (Docket No. 346248).

## II. DEPARTURE SENTENCE

We review departure sentences for reasonableness, *Lockridge*, 498 Mich at 392, and review a lower court's determination that a particular sentence is reasonable for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). In determining whether a trial court abused its discretion by unreasonably departing from the sentencing guidelines, we consider whether the court conformed to the principle of proportionality set forth in *Milbourn*, 435 Mich 630. *Steanhouse II*, 500 Mich at 476-477. In this regard, we must consider whether the trial court acted within its discretion by imposing a sentence that is proportionate to the seriousness of the particular offense and the character of the particular offender. *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017). Trial courts may depart "when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Milbourn*, 435 Mich at 657.

The statutory guidelines are "a useful tool" in selecting a proportionate sentence as they "embody the principle of proportionality." *Dixon-Bey*, 321 Mich App at 524. But a departure sentence may be "more proportionate" based on certain factors, such as "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines, but given inadequate weight." *Id*. at 525 (citations omitted). Factors not otherwise considered by the guidelines might include "the defendant's misconduct while in custody, the defendant's expression of remorse, and the defendant's potential for rehabilitation." *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (*Steanhouse I*) (citations omitted). Based on these various factors, the court must support not only its decision to depart, but also the extent of the departure. *Milbourn*, 435 Mich at 660. The "trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been . . . ." *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citations omitted). Ultimately, the court must articulate on the record why it is departing from the sentencing guidelines and why the particular sentence imposed is more proportionate than the guidelines recommended sentence.

This Court's "first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines." *Milbourn*, 435 Mich at 659-660. Therefore, this Court "must compare the stated reasons for exceeding the guidelines with the scored offense variables (OVs) to determine whether those reasons were already encompassed within the guidelines." *People v Steanhouse*, 322 Mich App 233, 239-240; 911 NW2d 253 (2017) (*Steanhouse III*), vacated on other grounds ___ Mich ___; 933 NW2d 276 (2019). However, "the key test is whether the sentence is proportionate to the seriousness of the

matter, not whether it departs from or adheres to the guidelines' recommended range." *Milbourn*, 435 Mich at 661.

Defendant was assessed 20 points for PRV 7, reflecting "2 or more subsequent or concurrent convictions." MCL 777.57(1)(a). Defendant was assessed 50 points for OV 3 as a victim was killed and defendant's offense involved driving under the influence. MCL 777.33(1)(b), (2)(c). Defendant received 15 points for OV 5 as "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). The court assessed 10 points for OV 9 to reflect that "2 to 9 victims . . . were placed in danger of physical injury or death." MCL 777.38(1)(c). OV 13 was scored at 25 points to reflect that the sentencing offense "was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). The court assessed 10 points each for OVs 17, 18, and 19. Ten points were warranted under OV 17 as defendant "showed a wanton or reckless disregard for the life . . . of another person." MCL 777.47(1)(a). OV 18's score was warranted based on defendant's intoxication at the time of the offense. MCL 777.48(1)(c). And a 10-point score was required for OV 19 as defendant "interfere[d] with the administration of justice" by fleeing the scene on foot. MCL 777.49(1)(c).

The justifications cited by the court in imposing an upwardly departing sentence were all taken into consideration in the scoring of these guideline variables. Defendant's decision to drive while intoxicated was covered by OVs 3, 17, and 18. Defendant's reckless driving was the foundation of his score for OV 17. The fact that the other driver was killed in the incident and her two sons seriously and permanently injured was taken into consideration in scoring OVs 3 and 9. The death of a victim was also an element of two of the sentencing offenses, and the serious injury of a victim was an element of the third. Indeed, defendant's intoxication was an element of two of the conviction offenses as well. The psychological impact of losing a wife, mother, and daughter, and of facing a future caring for a now physically disabled child was accounted for in OV 5. Although the court acknowledged that it was required to impose a reasonable and proportionate sentence, it did not explain how or why the circumstances were not adequately encapsulated by the guidelines and their maximum scores.

In imposing an upwardly departing sentence, the court also fixated on its characterization of this "incident" as nonaccidental. In every drunk driving offense, the offender chooses to drink and chooses to drive. Defendant's intent in this case was no different than the intent of any other drunk driving offender and does not remove the collision from the realm of "an accident." As described by the federal Court of Appeals for the Tenth Circuit:

> "Etymologically, an accident is simply 'something which happens'—'an event.' That is what the word originally meant in English, and it was only subsequently that the senses 'something which happens by chance' and 'mishap' developed. It comes from the Latin verb cadere 'fall' . . . . The addition of the prefix ad- 'to' produced accidere, literally 'fall to,' hence 'happen to.' Its present participle was used as an adjective in the Latin phrase rs accidns, 'thing happening,' and accidns soon took on the role of a noun on its own, passing (in its stem form accident-) into Old French and thence into English." [*Cassara v DAC Servs, Inc*, 276 F3d 1210, 1221 n 13 (CA 10, 2002), quoting Ayto, *Dictionary of Word Origins* 4 (1990).

-5-

The court further described, "an accident is '[a] happening that is not expected, foreseen, or intended,' or 'an unpleasant and unintended happening, sometimes resulting from negligence, that results in injury, loss damage, etc.' " *Cassara*, 276 F3d at 1221, quoting *Webster's New World College Dictionary* 8 (4th ed 1999). Indeed, in the context of no-fault insurance policies that fail to define the term, the Michigan Supreme Court has described, "an insured need not act unintentionally in order for the act to constitute an accident and therefore an occurrence." *Allstate Ins Co v McCarn*, 466 Mich 277, 282; 645 NW2d 20 (2002) (quotation marks and citations omitted). Even though defendant made certain choices that led to the outcome, the outcome was nevertheless an accident.

Ultimately, the devastating results of defendant's actions have no bearing on his intent. The death or serious injury of a victim was already taken into account by the Legislature's gradation of offenses when enacting the criminal statutes. MCL 257.617 criminalizes leaving the scene of an accident, with increased penalties under subsection (2) for cases involving death or serious injury and under subsection (3) when the defendant is at fault and caused the death or serious injury of another involved individual. MCL 257.625, criminalizing driving under the influence, also reflects the Legislature's consideration of the varying levels of seriousness of the offense. Defendant was already liable for the most serious penalty under the statute as his drunken operation of a motor vehicle led to the death of another. MCL 257.625(4)(a). Accordingly, defendant's "decision" to drink and drive was not a proper consideration in departing upward without further explanation.

Defendant complains that the court did not take into account the mitigating factors presented at sentencing. The court acknowledged that defendant had no history of driving while intoxicated and although defendant had a handful of misdemeanors on his record, the latest was in 2003. The court cited the 40-plus letters describing defendant's community, church, and family life. Defendant expressed remorse for his conduct as well. Given the plethora of mitigating factors in this case, the court's imposition of the maximum possible sentence leaves no room for the principle of proportionality to operate against more serious, repeat offenders. See, e.g., *People v Horn*, 279 Mich App 31, 44-45 (finding that "repeated offenses and failures at rehabilitation" may "constitute an acceptable justification for an upward departure"); *People v Solmonson*, 261 Mich App 657, 669; 683 NW2d 761 (2004).

Further, rather than explaining the inadequacy of the sentencing guidelines and why the sentences imposed were more reasonable and proportionate as compared to the guidelines, the trial court noted that the greatest minimum sentence it could impose was two-thirds of the statutory maximum. As the statutory maximum for his two more serious offenses was 15 years, the court imposed 10-year minimum sentences for these offenses. It is possible that these sentences were more reasonable and proportional; however, absent an adequate explanation of why the guidelines did not take adequate consideration of the factors cited by the court (and tainted by the court's improper colloquy regarding defendant's intent), we cannot decide that question. We must remand to allow for a fully explained, unbiased sentencing.

## III. REASSIGNMENT

Moreover, we must remand for further sentencing proceedings before a different trial court judge. A large portion of the trial court's explanation for its sentencing decision was based on the

court's conclusion that this case did not involve an automobile "accident." The court repeatedly asserted that defendant made deliberate choices on the day in question and therefore did not "accidentally" collide with the victims' car or "accidentally" kill the driver and seriously injure her children.

When determining whether remand to a different judge is required, we examine the following factors:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Walker*, 504 Mich 267, 285-286; 934 NW2d 727 (2019), quoting *People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (quotation marks and citations omitted).]

The trial judge expressed deep-seated personal opinions about defendant and we do not reasonably expect that the judge could easily put those views out of mind at resentencing. Even if the judge could view the case afresh with a clear mind, reassignment would be required to preserve the appearance of justice and impartiality on the part of the bench.

We affirm defendant's convictions, vacate defendant's sentences, and remand for further sentencing proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly