*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF MICHAEL WELLS, by GREGORY
WELLS, Personal Representative,

UNPUBLISHED
July 16, 2020

　　　　　Plaintiff-Appellant,

v

No. 348135
Macomb Circuit Court
LC No. 2017-003739-NI

STATE FARM FIRE & CASUALTY COMPANY,

　　　　　Defendant-Appellee,

and

JOSEPH NARRA,

　　　　　Defendant.

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

GLEICHER, J. (*dissenting*).

The question presented is whether defendant State Farm is obligated to indemnify its insureds, Gregory and Dawn Bobchick, in a lawsuit arising from the death of Michael Wells. Michael and two other teenagers lost their lives in a single-car automobile accident while occupying a vehicle insured by the Bobchicks. Plaintiff's complaint in the underlying lawsuit stated a social host liability claim against the Bobchicks. Defendant State Farm, the Bobchicks' homeowner's insurer, refused to defend against or indemnify the social host claim.

The majority holds that the circuit court properly granted summary disposition to State Farm under MCR 2.116(C)(8) because plaintiff's pleadings "show" that the accident was "the reasonably foreseeable direct result" of furnishing alcohol to minors, and therefore not an "occurrence" under the Bobchicks' policy. I respectfully dissent.

## I. UNDERLYING LAW

Plaintiff's entitlement to indemnification hinges on whether Michael Wells' death arose from an "occurrence" under the Bobchicks' State Farm policy. The policy defines an "occurrence"

-1-

as "an accident," which means "an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 114; 595 NW2d 832 (1999) (quotation marks and citation omitted). In *Masters*, the Supreme Court stressed that whether an event qualifies as an accident must be assessed from the *insured's* perspective: " 'accidents' are evaluated from the standpoint of the insured, not the injured person." *Id*. at 114 n 6. The Court emphasized that "an insured need not act unintentionally" for the event "to constitute an 'accident.' " *Id*. at 115 (quotation marks and citation omitted). In other words, an accidental result can flow from an intentional act. An injury may be unintended even though the act precipitating it was intentional.

*Allstate Ins Co v McCarn*, 466 Mich 277; 645 NW2d 20 (2002), presents our Supreme Court's most recent description of the analytical methodology governing whether an intentional act is an "accident" for insurance coverage purposes. The Supreme Court summarized in *McCarn* that "if both the act *and the consequences* were intended by the insured, the act does not constitute an accident." *Id*. at 282 (emphasis added). However, if the insured intended the act but not the consequences, "the act does constitute an accident, unless the intended act created a direct risk of harm from which the consequences should reasonably have been expected *by the insured*." *Id*. at 282-283 (emphasis added). Whether an insured should have reasonably anticipated the consequences of the act does not depend on whether "a reasonable person" would have done so; "an objective foreseeability test should not be used." *Id*. at 283 (emphasis omitted). The focus must remain on the insured: whether "the consequence of the intended act, which created a direct risk of harm, reasonably should have been expected by the insured." *Id*.

The "intentional act" involved in *McCarn* was the pointing and firing of a loaded shotgun approximately one foot from the decedent's face. Robert McCarn, the sixteen-year-old shooter, believed that the gun was unloaded. The decedent's estate sued Robert and his grandparents, who owned the shotgun and had a homeowner's insurance policy with Allstate. Allstate sought a declaratory judgment that it had no duty to indemnify the McCarns. *Id*. at 279. Applying the legal principles described above, the Supreme Court held that the decedent's death was an "accident" covered by the policy despite that Robert had deliberately pointed the gun at the decedent and intentionally pulled the trigger. Robert acted without knowledge that the gun was loaded, and did not intend to fire a loaded weapon. *Id*. at 285.[1] Because he did not intend that a bullet would strike the decedent, from his perspective Robert could not have reasonably expected the consequence of his acts. Therefore, the shooting was an "accident" and coverage required. *Id*.

The Supreme Court took great pains to stress that the standard under which courts are to gauge whether the consequences of an act were "reasonably expected" is *subjective*:

> The dissent goes to great lengths to show that under an objective standard, the insured should have reasonably expected the consequences. We simply cannot

---

[1] The fact that Robert was unaware that the shotgun was loaded was uncontested, the Supreme Court observed. *Allstate Ins Co v McCarn*, 466 Mich 277, 285; 645 NW2d 20 (2002). Because there was no genuine issue of material fact on this point, the Supreme Court held that the death was an accident and therefore an occurrence under the policy. *Id*.

agree because the language of the test adopted in *Masters* requires us to *subjectively* analyze what Robert thought when he pulled the trigger. Robert thought he was pulling the trigger of an *un*loaded gun. [*Id*. at 286-287 (emphasis in original).]

Although Robert "was careless and foolish," the Supreme Court elucidated, his negligence "simply did not rise to the level that he should have *expected* to result in harm." *Id*. at 287-288 (emphasis in original).

Three critical takeaways from *McCarn* are directly relevant to the case before us. First, the analysis of whether an event was an "accident" is inherently fact specific because it depends on the insured's beliefs and perceptions as they relate to the *consequences* of the purportedly intended act. This means that summary disposition cannot be granted on the pleadings. Period. Second, the mere fact that an *act* was intentional does not eliminate coverage if the resulting injuries were unintended. And third, courts must evaluate the question by focusing on the injury-causing event and whether *that* event was intended or reasonably expected by the insured.

## III. ANALYSIS

In *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019), the Supreme Court emphasized that "[t]he distinction between MCR 2.116(C)(8) and (C)(10) is one with an important difference: a claim's legal sufficiency as opposed to a claim's factual sufficiency." The majority loses sight of that distinction here. *McCarn* instructs that whether an event was an accident must be viewed from the perspective of the insured. Therefore, the relevant question is whether the Bobchicks intended that the accident would occur when they allegedly supplied the teenagers with alcohol or negligently permitted the teens to drink alcohol in their home.

For this reason, the majority errs by treating this as a (C)(8) motion. The pleadings do not describe the Bobchicks' intentions or their subjective perceptions. "Knowingly" providing or furnishing alcohol is a far cry from *intentionally* setting in motion a tragic automobile accident. Nothing in the pleadings suggests that the Bobchicks intended the result of their allegedly "knowing" actions. Because the Bobchicks' beliefs and understandings are at the heart of the "occurrence" question and the pleadings do not even mention the Bobchicks' subjective beliefs, summary disposition cannot be granted under MCR 2.116(C)(8).

And there is another, even more obvious reason that the majority errs by granting summary disposition under MCR 2.116(C)(8). Plaintiff's complaint in this case alleges in paragraphs 32 and 33 that based on the Bobchicks' State Farm policy of insurance, State Farm "was required to pay any judgment against the homeowner," and "is liable to Plaintiffs for judgment of $475,000, plus interest." These allegations must be accepted as true. *El-Khalil*, 504 Mich at 160. A motion

brought under MCR 2.116(C)(8) tests only the legal sufficiency of the complaint, and nothing more. Plaintiff adequately pleaded his claim, and that should have ended the inquiry under (C)(8).[2]

The record before the circuit court did not support summary disposition under (C)(10), either. The deposition testimony of Dawn Bobchick refutes that she intended the accident. Indeed, she disputed engaging in any intentional acts related to the alcohol. Dawn denied that she supplied the boys with alcohol and insisted that she had not allowed them to drink in her home on the day of the accident. She also denied any awareness that the boys had been drinking that day, and did not know that her son planned to allow someone else to drive the Jaguar. Dawn acknowledged that she remained in the basement during the time the teenagers were in her home, and that the family kept alcohol upstairs. Even assuming she permitted the boys to drink by turning a blind eye to what was occurring upstairs, her deposition testimony simply does not support that she intended that an accident would occur.[3]

The majority avoids any consideration of Dawn's subjective perceptions by simply ignoring them, and instead decides the case under (C)(8) based on the allegation of proximate causation in plaintiff's second amended complaint. Plaintiff's tort complaint alleged that the Bobchicks' "negligence" in supplying alcohol was a proximate cause of the accident. The majority holds that by pleading proximate cause, the Bobchicks admitted that the accident was "the natural and foreseeable result of knowingly furnishing alcohol to the minors," and therefore conclusive evidence of the Bobchicks' intent.

The majority's reliance on plaintiff's proximate cause pleading is misplaced for two reasons. First, if the majority were correct and pleading proximate causation definitively establishes an insured's subjective intent to cause all foreseeable consequences of an intentional act, there would be no need for the *McCarn* analysis or any other. *Every* negligence claim includes

---

[2] Despite that the majority decides this case under MCR 2.116(C)(8), it devotes considerable ink to a discussion of facts outside the pleadings. A motion decided under MCR 2.116(C)(8) "tests the legal sufficiency of a claim based on the factual allegations in the *complaint*." *El-Khalil v Oakwood Healthcare*, 504 Mich 152, 159; 934 NW2d 665 (2019) (emphasis modified). Evidence extraneous to the pleadings is irrelevant in a (C)(8) context.

[3] The majority declares that Dawn "stated that she knew providing underage persons with alcohol could result in their operating motor vehicles poorly, resulting in an accident." Here is the actual testimony:

> *Q.* . . . What else do you think could happen if a minor were to consume alcohol, get behind the wheel of a car and crash and kill somebody, ever occurred to you?
>
> *A.* Well, yes, that could happen.

This testimony does not even come close to establishing that Dawn intentionally supplied alcohol to underage boys. And it most certainly does not establish the she intended that the boys would have an auto accident or reasonably expected that an accident would occur.

an allegation of proximate cause: that the action or inaction of a defendant "must have been a cause of plaintiff's injury, and second, that the plaintiff's injury must have been of a type that is a natural and probable result of the negligent conduct." M Civ J I 15.01. Without such an allegation, a tort complaint would be subject to dismissal under MCR 2.116(C)(8). Assuming a properly pleaded negligence claim, the majority's contrived and precedent-lacking "proximate cause" test would mandate an automatic dismissal of every coverage dispute similar to this one. Does the majority truly believe that the underlying complaint in *McCarn* omitted an allegation that the insureds' negligence proximately caused the decedent's wrongful death?

The second defect in the majority's proximate cause analysis is equally obvious. Proximate cause rests on an inherently *objective* standard. "A result is reasonably foreseeable if there are indications which would lead a reasonably prudent man to know that the particular results could follow from his acts." *Allstate Ins Co v Freeman*, 432 Mich 656, 675; 443 NW2d 734 (1989) (quotation marks and citation omitted). As every law student knows, the "reasonably prudent person" standard is objective. In contrast, the Supreme Court has explicitly held that the standard required here is *subjective*: "an objective foreseeability test should not be used[.]" *McCarn*, 466 Mich at 283. This means that courts must avoid applying an "objective" standard—whether a reasonable person would have foreseen an injury is irrelevant. Rather than disavowing an objective standard, as we were specifically instructed to do in *McCarn*, the majority embraces one.

The Supreme Court explained in *McCarn* that the approach adopted by the majority "undermines the ability of insureds to protect themselves against their own foolish or negligent acts." *McCarn*, 466 Mich at 288. The majority's application of an objective standard defeats the purpose of insurance, which is to protect policyholders against foreseeable injuries proximately caused by the policyholder's acts or omissions. The Court hypothesized in *McCarn*:

> If one is driving too fast on a highway, not intending to but nonetheless causing an accident, it can hardly be denied that what has resulted is an accident despite the fact that it might be traceable to 'objectively unreasonable' conduct by the insured, i.e. driving too fast on a highway." [*Id*. at 289.]

I would add that in the parlance of proximate cause, an accident is the reasonably foreseeable consequence of driving too fast, yet coverage flowing from the intentional, deliberate act of speeding is not foreclosed for this reason. That is because in retrospect, a consequence may be foreseeable despite that it was not intended. The majority opinion conflates proximate cause principles with the analysis dictated in *McCarn*. In so doing, the majority simply jettisons the rule that an event may constitute an occurrence if the insured did not expect or intend the resulting injury.

The majority further holds that summary disposition is warranted under (C)(8) because the "pleadings and the consent judgment determined that the Bobchicks knowingly provided alcohol to the two minors that were operating the Jaguar at the time of the crash, [and] no further factual development is necessary regarding what was in Dawn Bobchick's mind." This holding, too, lacks any legal merit. As discussed above, Dawn Bobchick's "knowing" provision of alcohol is not the issue for indemnification purposes. The question is whether Dawn intended the consequence of that purportedly knowing act—the auto accident. Her provision of alcohol does not answer that question.

Further, the majority's reliance on the consent judgment is unavailing. In relevant part the consent judgment provides:

> 2.    The Second Amended Complaint filed by the Estate of Michael Wells consists of a wrongful death action alleging: (1) automobile liability claims against the Bobchicks, consisting of negligent and/or grossly negligent operation of a motor vehicle . . . and (2) a social host liability claim against Gregory A. Bobchick Sr. and Dawn Bobchick consisting of furnishing alcohol to a minor child (hereinafter referred to as the "social host liability claim") (Count IV of the Second Amended Complaint).

> * * *

> 7.    The Bobchicks and the Estate of Michael Wells have therefore entered into a Settlement Agreement, Assignment, Covenant Not To Sue and Covenant Not To Execute (hereafter the "Settlement Agreement") pursuant to which Gregory A. Bobchick Sr. and Dawn Bobchick consent to the entry of the following judgment for the purpose of compromising the disputed social host liability claim of the Estate of Michael Wells: [amount omitted].

The majority's insistence that the consent judgment is of import in this case is puzzling, as it contains no admissions of any sort. Rather, it merely repeats the allegations made in the underlying suit, none of which were actually litigated or determined. There is nothing here constituting an admission of Dawn Bobchick's intent regarding the accident. Moreover, there is no inconsistency between the consent judgment and plaintiff's current pleadings, and the circuit court never adopted any position regarding the accident and Dawn's subjective intent. For those reasons the majority's "judicial estoppel" exegesis is entirely inapt. See *Paschke v Retool Indus*, 445 Mich 502, 510; 519 NW2d 441 (1994) ("[T]he mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as true. Further, in order for the doctrine of judicial estoppel to apply, the claims must be wholly inconsistent.").

*McCarn* counsels that the accident in which Michael Wells lost his life is the "occurrence" at issue in this case, and that State Farm's indemnification obligation depends on whether Dawn Bobchick expected or intended the accident to happen. That question may be answered only with evidence. No such evidence exists in this record. I would reverse the circuit court's summary disposition ruling and remand for further proceedings.

/s/ Elizabeth L. Gleicher