STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v
BURBANK

Docket No. 127799. Submitted April 17, 1991, at Lansing. Decided
June 18, 1991, at 9:55 A.M.

State Farm Mutual Automobile Insurance Company, Christopher
J. Clemens, and his father, Robert R. Clemens, brought an
action in the Saginaw Circuit Court, seeking a declaration
regarding State Farm's liability, under an automobile insur-
ance policy issued to Christopher Clemens covering a car he
owned, for damages to Rodney A. Burbank, II, and others
injured in an automobile accident involving Christopher J.
Clemens while driving his father's automobile. The court, Leo-
pold P. Borrello, J., granted summary disposition for the defen-
dants, finding State Farm liable to the extent of its coverage
under Christopher's policy. The plaintiff appealed.

The Court of Appeals *held*:

The policy provided coverage when Christopher drove a "non-
owned car." His father's car was a "non-owned car," as that
term is defined in the policy, because it was not available for
Christopher's regular or frequent use, and because his father is
not considered his relative under the policy. The term "rela-
tive" is defined in the policy as a person related to the insured
who lives with the insured; Christopher, a student residing in
Florida, does not live with his father. The trial court correctly
determined that the policy provided coverage to Christopher
Clemens for the accident.

Affirmed.

*Smith & Brooker, P.C.* (by *Robert A. Jarema*),
for the plaintiffs.

*Trogan & Trogan* (by *Nicholas R. Trogan, III*),
for Rodney A. Burbank, II, Larry Urbain, Jr., and
Scott R. Nothelfer.

*Jay Trucks & Associates, P.C.* (by *Todd Trucks*),
for Kathleen A. Conklin, individually and as per-

sonal representative of the estates of Jessica Williams, Gary Williams, Kari Williams, and Boyd Conklin, deceased, and as conservator of the estates of Amber J. Conklin and Helen Williams.

Before: SAWYER, P.J., and MARILYN KELLY and NEFF, JJ.

PER CURIAM. The trial court granted summary disposition pursuant to MCR 2.116(C)(8), (10) in favor of defendants on plaintiffs' complaint seeking a declaratory judgment concerning their obligations under an insurance policy issued by plaintiff State Farm Mutual Automobile Insurance Company naming plaintiff Christopher Clemens as the insured. Plaintiffs now appeal and we affirm.

Christopher Clemens was involved in an automobile accident on January 1, 1988, when he failed to heed a stop sign and drove through an intersection at approximately sixty-five miles an hour, striking broadside a vehicle driven by defendant Kathleen Ann Conklin. Four occupants of the Conklin vehicle were killed, three others were seriously injured, and three passengers in the Clemens vehicle were also injured. State Farm had also written the insurance policy covering the vehicle owned by Christopher Clemens' father, plaintiff Robert Clemens, which Christopher Clemens was driving at the time of the accident. Plaintiffs admitted liability and State Farm paid the policy limits of the policy issued to Robert Clemens into court, and an interpleader action was commenced against defendants for distribution of the proceeds of that policy. Defendants, however, also sought recovery against the insurance policy issued by State Farm to Christopher Clemens covering the vehicle owned by him. State Farm then sought a declara-

tory judgment concerning its liability with regard to the Christopher Clemens policy.[1]

This case involves what is known as the owned-vehicle exclusion clause of an automobile insurance policy. Specifically, in general terms, the insurance policy at issue provides liability coverage when the named insured is driving the specific automobile named in the declarations of the insurance policy as well as any non-owned automobile, as defined in the policy. Coverage is excluded, however, with regard to any owned automobile, as defined in the insurance policy, which is not listed on the declaration pages. In the case at bar, Christopher Clemens was driving an automobile owned by his father, which automobile was not listed on the declaration page of Christopher Clemens' own insurance policy. The question, therefore, becomes whether the automobile was "owned" or "non-owned" by Christopher Clemens, as those terms are defined in his insurance policy. If the former, then there is no coverage, while coverage would be applicable if the vehicle is "non-owned."

Owned-vehicle exclusion clauses are valid as long as they are clear and unambiguous and employ easily understood terms and plain language. *Shank v Kurka,* 174 Mich App 284, 288; 435 NW2d 453 (1988); see also *Powers v DAIIE,* 427 Mich 602; 398 NW2d 411 (1986); *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355; 314 NW2d 440 (1982). We agree with plaintiffs that the owned-vehicle exclusion clause in the policy at issue in this case is enforceable, but we

---

[1] For reasons not readily apparent to us, State Farm as well as the Clemenses are listed as plaintiffs in the trial court and collectively as appellants in this Court, suggesting a unity of interests. It would seem, however, that State Farm's interests are adverse to those of the Clemenses inasmuch as the outcome of the declaratory judgment action may affect the personal liability of the Clemenses to the various defendants. This, however, does not affect the outcome of this appeal.

also conclude that, under the terms of the insurance policy, plaintiff State Farm is liable.

The insurance policy, in addition to specifically excluding coverage when the insured is operating a vehicle owned by or furnished or available for the regular or frequent use of the insured or any relatives of the insured, other than a car listed on the declaration page, also explicitly provides coverage for an insured while operating a "non-owned car." The insurance policy defines the term "non-owned car" as follows:

> Non-Owned Car—means a car not:
> 1. owned by,
> 2. registered in the name of, or
> 3. furnished or available for the regular or frequent use of:
> you, your spouse, or any relatives.

Furthermore, the policy defines "relatives" as follows:

> Relative—means a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school.

Plaintiffs advance two separate arguments concerning why coverage is not available under the policy. First, plaintiffs argue that the automobile involved in the accident was not a "non-owned car" with respect to Christopher Clemens because it was furnished or available for his regular or frequent use. Second, plaintiffs argue that the vehicle was owned by Christopher Clemens' father, Robert Clemens, who is a relative of Christopher Clemens, as defined in the policy. We disagree with both of these propositions.

Turning first to the question whether the auto-

mobile was furnished or available for the regular or frequent use of Christopher Clemens, we conclude that there is no evidence to support the conclusion that Christopher Clemens' use of the vehicle was either regular or frequent. The insurance policy does not define the terms "regular" or "frequent" and, therefore, we must assign them their plain and ordinary meaning. *Lamotte v Millers Nat'l Ins Co,* 180 Mich App 271, 275; 446 NW2d 632 (1989). The definitions of "regular" listed in *The Random House College Dictionary,* rev ed, p 1111, include the following:

> 1. usual; normal; customary. . . . 4. recurring at fixed or uniform intervals. . . . 6. being consistently or habitually such: *a regular customer.*

*Random House,* p 529, defines "frequent" as follows:

> 1. happening or occurring at short intervals: *to make frequent trips to a place.* 2. constant, habitual, or regular: *a frequent guest.*

The only evidence in the record before us concerning Christopher Clemens' use of the automobile involved in the accident comes from his own deposition. Clemens was attending the New England Institute of Technology located in West Palm Beach, Florida. He attended school year round and had a motor vehicle with him in Florida, the vehicle listed on the declaration page of his own policy. Clemens would return to Michigan during semester breaks. Those breaks would last no more than three weeks and he would return to Michigan approximately every three months. Clemens testified that these breaks differed in length, occurred at different times, and varied from year to year. When he returned to Michigan, he would fly

and, while in Michigan, he would have access to two motor vehicles owned by his parents, the Mercury Marquis station wagon involved in the accident and a Pontiac Grand Am. Clemens' deposition does not indicate whether there was any greater frequency in use of the Marquis than in the use of the Grand Am. Under the facts of this case, we cannot conclude that the Marquis was available for Clemens' regular or frequent use, as that clause is used in the insurance policy.

First, Christopher Clemens did not regularly use the automobile involved in the accident. Indeed, he regularly used his automobile in Florida, using his parents' automobiles in Michigan only a small portion of the time. Furthermore, Christopher Clemens did not frequently use the Mercury Marquis. He only used that automobile during the time he spent in Michigan, which was approximately four times a year and a maximum of three weeks during each visit. This is certainly not frequent use. Accordingly, we conclude that the automobile was not available for his regular or frequent use and, therefore, is not excluded from the definition of a "non-owned car," as used in the insurance policy.

However, the Mercury Marquis is also excluded from the definition of a "non-owned car" if its owner, Robert Clemens, is considered a relative of Christopher Clemens, as the term "relative" is defined in the insurance policy. Although Robert Clemens, as Christopher Clemens' father, would certainly be considered a relative under the ordinary meaning of that word, the insurance policy draws a much narrower definition which, for the reasons to be discussed below, we conclude does not fit Robert Clemens. To be a relative within the meaning of the insurance policy, the person must be related to the insured by blood, marriage, or

adoption and must live with the insured. The facts of the case at bar do not support the conclusion that Robert Clemens lived with Christopher Clemens, or vice versa.

There is no dispute that Robert Clemens lived in St. Charles, Michigan. The parties do dispute, however, where Christopher Clemens lived. Plaintiffs take the position that Christopher Clemens lived in St. Charles with his parents, although he was physically present in the State of Florida most of the year attending school.[2] Defendants, on the other hand, maintain that Christopher Clemens lived in Florida and merely visited Michigan during school breaks. Again, the only evidence in the record concerning where Christopher Clemens lived is that contained in Christopher Clemens' deposition.

According to Clemens' testimony, he began his studies at the New England Institute of Technology in the fall of 1986, more than one year before the accident. The first few months in Florida he stayed with his sister and brother-in-law, and thereafter moved into his own apartment. At the time of the accident, Christopher Clemens had a Florida driver's license and his vehicle was registered in Florida. He was not registered to vote in either Michigan or Florida.

The facts of this case do not support a conclusion that Christopher Clemens lived with his father. While there might be some argument that Christopher Clemens' legal residence remained in

---

[2] Plaintiffs' brief does not set forth any detailed argument to support the proposition that Christopher Clemens lived in Michigan with his father and, therefore, that his father was a "relative" as that term is used in the policy. Rather, plaintiff merely makes the affirmative assertion that Christopher Clemens was driving a relative's vehicle, without discussing whether Robert Clemens was a "relative" of Christopher Clemens, as that term is used in the policy. In fact, plaintiffs' brief does not even discuss the definition of "relative" contained in the policy.

Michigan in light of the fact that he was attending school, that conclusion is neither compelled by the facts nor, for that matter, relevant to the determination of this case. The insurance policy does not define the term "relative" in terms of a person's legal domicile or legal residence. Rather, it uses the phrase "live with" in defining a relative. Thus, in drafting its insurance contract, State Farm chose not to incorporate the legal concepts behind residence, including the possibility that one's legal residence is other than where he is physically located and owns or rents shelter.

We construe exclusionary clauses strictly against the insurer, and also any ambiguous language in an insurance contract. *Lamotte, supra* at 275. In light of this rule of strict construction against the insurance company, we conclude that the term "live with" as used in the State Farm policy refers to that location where the person principally lives, that is, where the person receives his mail, eats and sleeps, and where he principally spends his time when not otherwise engaged with the activities of life. In the case at bar, Christopher Clemens lived in the State of Florida. He maintained an apartment there, spent most of his time there, received mail there, was licensed to drive there, and had registered his motor vehicle there. Accordingly, the facts support but one conclusion: Robert Clemens lived in the State of Michigan and Christopher Clemens lived in the State of Florida and, more importantly, Robert Clemens did not live with Christopher Clemens. Therefore, Robert Clemens is not a "relative" of Christopher Clemens, as that term is used in the State Farm policy.

For the above reasons, we conclude that, while State Farm's owned-vehicle exclusion is valid, it is

inapplicable to the case at bar. The Mercury Marquis driven by Christopher Clemens at the time of the accident is, with respect to the insurance policy involved in the case at bar issued to Christopher Clemens, a "non-owned car" and, therefore, the insurance policy provides liability coverage to Christopher Clemens for this accident.

Affirmed. Defendants may tax costs.