*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PETER EDWARD DUATO,

        Plaintiff-Appellant,

v

DENISE ELAINE MELLON and INDIAN
HARBOR INSURANCE COMPANY,

        Defendants,

and

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant-Appellee.

FOR PUBLICATION
November 16, 2023
9:05 a.m.

No. 362823
Wayne Circuit Court
LC No. 21-007727-NI

Before: O'BRIEN, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's stipulated order dismissing his claims against defendant Indian Harbor Insurance Company ("IHIC") with prejudice, and challenges on appeal the court's prior order granting summary disposition in favor of defendant Progressive Marathon Insurance Company ("Progressive") under MCR 2.116(C)(10) on the issue of whether plaintiff was entitled to underinsured motorist ("UIM") benefits under Progressive's policy. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from a motor vehicle accident in which plaintiff, a Lyft "rideshare" driver, was transporting a passenger and was rear ended by defendant Denise Mellon while stopped at a red light. At the time of the accident, plaintiff was renting a 2019 Honda Elantra that was owned by Flexdrive Services, LLC ("Flexdrive") and insured under a policy issued by IHIC. Plaintiff rented the Elantra on a weekly basis from August 2019 until the accident, which occurred on

April 26, 2020. Plaintiff also had a personal automobile insurance policy issued by Progressive (the "Policy"), under which he was listed as a named insured. The Elantra was not insured by the Policy, which provided for UIM benefits for insured persons, but excluded UIM benefits for "bodily injury sustained by any person" when using "any vehicle that is owned by or available for the regular use of you, a relative, or a rated resident." The exclusion, however, did not apply to a "covered auto," which was defined as "any auto or trailer shown on the declarations page," "any additional auto," "any replacement auto," or "a trailer" owned by the insured.

Plaintiff brought suit against defendants, alleging: (1) Mellon negligently operated her vehicle in contravention of Michigan law; (2) IHIC failed to pay plaintiff personal injury protection benefits and UIM benefits; and (3) Progressive failed to pay plaintiff UIM benefits.[1] Progressive answered plaintiff's complaint, denying the allegations as untrue and asserting various affirmative defenses, including that plaintiff's UIM claims were barred by the exclusions in the Policy.

Progressive moved for summary disposition under MCR 2.116(C)(10), arguing that under the terms of the Policy, plaintiff was not entitled to collect UIM benefits. According to Progressive, the Policy excluded plaintiff from collecting UIM benefits if: (1) he sustained bodily injury while using any vehicle available for "regular use"; and (2) the vehicle did not qualify as a "covered auto." Progressive asserted the Elantra did not qualify as a "covered auto" because it was not listed in the declarations page of the Policy. Although the Policy did not define "regular use," because plaintiff admitted "he had exclusive, continuous, and uninterrupted use" of the Elantra at the time of the accident, Progressive asserted the Elantra qualified as a vehicle available for "regular use." To determine whether there was "regular use" of a vehicle, Progressive claimed the focus should be on whether plaintiff has a right to regularly use the vehicle, and not on the actual use of the vehicle. Because the Elantra was available to plaintiff for "regular use," and plaintiff regularly and continuously used the Elantra to drive for Lyft for eight months before the accident, Progressive argued plaintiff was not entitled to UIM benefits.

Plaintiff argued Progressive's motion should be denied because plaintiff did not own or regularly use the Elantra. Plaintiff claimed he was entitled to UIM benefits under the Policy "so long as he is not occupying any vehicle that is owned by or 'available for the regular use' of him." Because the Policy did not define the phrase "available for the regular use," plaintiff asserted it should be defined as "a vehicle that is ready for immediate and continuous use or a vehicle that is free and able to be used continuously at any particular time." Plaintiff contended that a vehicle is not "available for regular use" if someone other than the policy holder maintains sole dominion and control over the vehicle. According to plaintiff, Flexdrive owned and retained sole dominion and control over the Elantra and "maintained direct influence and power over how [plaintiff] used" it. Plaintiff also asserted that he did not use the Elantra over the allotted personal use limit and

---

[1] In a stipulated order, the trial court dismissed plaintiff's claim against Mellon with prejudice "in accordance with the terms and conditions of the signed Release and Settlement Agreement[.]" The trial court also granted partial summary disposition in favor of IHIC and dismissed plaintiff's UIM benefits claim with prejudice. In the final stipulated order, plaintiff's remaining benefits claim against IHIC was dismissed. These orders are not at issue in this appeal.

that he was the sole operator. Because plaintiff's use of the Elantra was not "regular" or "continuous," plaintiff argued he was entitled to UIM benefits.

The trial court granted summary disposition in favor of Progressive and dismissing plaintiff's UIM benefits claim against Progressive with prejudice, finding the Elantra was "available for regular use" by plaintiff because it was "a vehicle that is ready for immediate and continuous use or a vehicle that is free and able to be used continuously at any particular time." The trial court continued:

> In this case, [plaintiff's] use of the 2019 Hyundai Elantra meets this definition that he had use, ready and immediate access and continuous use of the vehicle. [Plaintiff] testified that he initially rented the Hyundai beginning around the end of August, 2019 . . . . [A]lthough the Elantra was owned and registered by Flexdrive Services, [plaintiff] continuously renewed the weekly rental agreement, through the date of the accident, April 26, 2020, and the rental company, Flexdrive, provided insurance for it. The rental agreement would automatically renew weekly, unless he canceled it. He also testified that he was the only person allowed to operate the vehicle, per the terms of the rental agreement, . . . he did not let anyone else drive it, from August 26, 2019 to April 26, 2020, and if he wanted to use it for personal use, he would have to pay additional fees over a certain number of miles.

Thus, the court found that the Elantra was in plaintiff's "exclusive control and possession" and therefore fell into the exclusion under the Policy. Plaintiff moved for reconsideration under MCR 2.119(F)(3), which the trial court denied. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Hastings Mut Ins Co v Grange Ins Co of Mich*, 319 Mich App 579, 583; 903 NW2d 400 (2017). Summary disposition under MCR 2.116(C)(10) "is proper if the evidence, affidavits, pleadings, and admissions viewed in a light most favorable to the other party demonstrate that there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). "Insofar as the motion for summary disposition involves questions regarding the proper interpretation of a contract, this Court's review is de novo." *Johnson v USA Underwriters*, 328 Mich App 223, 234; 936 NW2d 834 (2019).

## III. ANALYSIS

Plaintiff argues the trial court erred by granting summary disposition in favor of Progressive and dismissing his claim for UIM benefits because there was a genuine issue of material fact whether the Elantra was available to him for "regular use." Plaintiff contends that the Policy does not define the phrase "available for the regular use" and, as such, any interpretations of this phrase should be construed in favor of plaintiff. According to plaintiff, the phrase "available for regular use" can be defined as a vehicle ready for immediate and continuous use or a vehicle free and able to be used continuously at any particular time, but is not available for "regular use" if someone other than the policy holder has sole dominion and control over it.

Plaintiff argues that the evidence showed that Flexdrive owned the Elantra and maintained direct influence and control over how plaintiff used it under the terms of the rental agreement. Plaintiff contends that because he never exceeded the personal mileage allotment under the rental agreement and did not use the Elantra for personal reasons, the Elantra was not available to plaintiff for continuous or "regular use." We disagree.

"[U]nderinsured-motorist coverage is not required by Michigan law, and the terms of coverage are controlled by the language of the contract itself, not by statute." *Dawson v Farm Bureau Mut Ins Co of Mich*, 293 Mich App 563, 568; 810 NW2d 106 (2011). When interpreting an insurance policy, a two-step analysis is employed: first, whether the insurance agreement generally provides coverage for the occurrence and, if so, whether coverage is negated by an exclusion. *Auto-Owners Ins Co v Harrington*, 455 Mich 377, 382; 565 NW2d 839 (1997). The insured bears the burden to demonstrate coverage, while the insurer bears the burden of proving the applicability of an exclusion. *Seils*, 310 Mich App at 146. Although "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured," clear and specific exclusions must be enforced as written. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992).

Similarly, we have continuously emphasized that we "must construe and apply unambiguous contract provisions as written." *Pioneer State Mut Ins for Publ'n Co v Dells*, 301 Mich App 368, 378; 836 NW2d 257 (2013) (citation and quotation marks omitted). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning." *Id.* (citation and quotation marks omitted). "[W]hen determining the plain and ordinary meaning of these words and phrases it is appropriate to consult a dictionary." *Seils*, 310 Mich App at 148. "While we construe the contract in favor of the insured if an ambiguity is found, this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefitting an insured." *Pioneer State Mut Ins for Publ'n Co*, 301 Mich App at 378.

The relevant language of the Policy states:

**<u>EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY.</u> IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**

Coverage under this Part III will not apply:

1. to **bodily injury** sustained by any person while using or **occupying**:

a. a **covered auto** while being used:

(*i*) to carry persons or property for compensation or a fee;

(*ii*) for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or

(*iii*) for **ride-sharing activity**.

This exclusion does not apply to shared-expense car pools or to the use of a **covered auto** for volunteer or charitable purposes or for which reimbursement for normal operating expenses is received; or

   b. any vehicle that is owned by or available for the regular use of **you**, a **relative**, or a **rated resident**. This exclusion does not apply to a **covered auto** that is insured under this Part III[.]

The parties agree the Elantra was not a "covered auto" under the Policy. The issue on appeal is whether the Elantra was "available for the regular use" of plaintiff.

The Policy does not define the phrase "available for the regular use," so it is appropriate to consult a dictionary to define this phrase. See *Seils*, 310 Mich App at 148. "Available" is defined as: "present or ready for immediate use," "accessible," and "obtainable." *Merriam Webster's Collegiate Dictionary* (11th ed). "Use" is defined as: "the act or practice of employing something," "the fact or state of being used," and "the ability or power to use something." *Id.* "Regular" is defined as: "orderly," "methodical," and "recurring, attending or functioning at fixed, uniform, or normal intervals." *Id.*; see also *State Farm Mut Auto Ins Co v Burbank*, 190 Mich App 93, 97; 475 NW2d 399 (1991) (defining "regular" in the context of an automobile policy exclusion as "usual; normal; customary" and "recurring at fixed or uniform intervals") (quotation marks and citation omitted). Additionally, the phrase "regular use" is defined as:

   A use that is usual, normal, or customary, as opposed to an occasional, special, or incidental use. This term often appears in automobile-insurance policies in the definition of a nonowned automobile—that is, an automobile not owned by or furnished for the regular use of the insured. Nonowned automobiles are excluded from coverage under most liability policies. [*Black's Law Dictionary* (11th ed).]

In *Burbank*, 190 Mich App at 94-95, we considered a similar exclusion clause in a case brought by the defendant insurer seeking declaratory judgment concerning liability under a policy issued to a vehicle accident victim's father. In addition to excluding coverage while operating a "non-owned" vehicle, the defendant's policy also excluded coverage "when the insured is operating a vehicle owned by or furnished or available for the regular or frequent use of the insured or any relatives of the insured . . . ." *Id.* at 96. The policy did not define the terms "regular" or "frequent," which this Court defined by use of a dictionary:

The definitions of "regular" listed in The Random House College Dictionary, rev. ed., p. 1111, include the following:

   1. usual; normal; customary . . . . 4. recurring at fixed or uniform intervals . . . . 6. being consistently or habitually such: a regular customer.

Random House, p. 529, defines "frequent" as follows:

   1. happening or occurring at short intervals: to make frequent trips to a place. 2. constant, habitual, or regular: a frequent guest. [*Id.* at 97.]

-5-

The vehicle accident victim, Clemens, attended college in Florida and "would return to Michigan during semester breaks," which "would last no more than three weeks and he would return to Michigan approximately every three months." *Id*. Concluding that the vehicle in question was not available for Clemens's regular and frequent use, the Court stated:

> First, Christopher Clemens did not regularly use the automobile involved in the accident. Indeed, he regularly used his automobile in Florida, using his parents' automobiles in Michigan only a small portion of the time. Furthermore, Christopher Clemens did not frequently use the Mercury Marquis. He only used that automobile during the time he spent in Michigan, which was approximately four times a year and a maximum of three weeks during each visit. This is certainly not frequent use. Accordingly, we conclude that the automobile was not available for his regular or frequent use . . . . [*Id*. at 98.]

In this case, the record before the trial court demonstrated: (1) plaintiff continuously rented the Elantra from August 2019 until April 2020; (2) during the rental period, plaintiff drove the Elantra approximately 34,500 miles; (3) plaintiff regularly used the Elantra as a Lyft driver; (4) plaintiff drove about 30 hours per week for Lyft; and (5) plaintiff did not use the Elantra for personal use over the allotted personal mileage because it "was extremely expensive" to do so. Additionally, so long as plaintiff complied with the terms of the rental agreement, he was granted "a non-exclusive, limited, non-transferable, freely revocable license" to use the Elantra for personal use and as a Lyft driver. The rental agreement only allowed plaintiff, as the renter, to drive the Elantra and imposed a $30 per 50 miles charge for personal use mileage in excess of the allotted 225 personal miles.

Viewing the evidence in the light most favorable to plaintiff, there is no genuine issue of material fact the Elantra was accessible for the normal, recurring use of plaintiff between August 2019 until April 2020. Although plaintiff's use of the Elantra was subject to the terms of the rental agreement, there is nothing to suggest plaintiff failed to comply with the rental agreement. And unlike the driver in *Burbank*, who used his father's vehicle sporadically when he was home from college for three weeks every three months, plaintiff had nearly unfettered, exclusive, and continuous access to use the Elantra to drive for Lyft and for personal use for the span of approximately seven months. Indeed, plaintiff drove the Elantra about 30 hours per week, mostly as a Lyft driver, accruing nearly 35,000 miles between August 2019 and April 2020. This constitutes recurring, normal use of the Elantra.

Plaintiff also contends the Elantra was not available to him for "regular use" because Flexdrive retained sole dominion and control over it and, through the rental agreement, controlled plaintiff's use. In support, plaintiff relies on *Owners Ins Co v Barone*, 832 F Supp 2d 804 (ND Ohio, 2011).[2] In *Barone*, the district court held that "a vehicle is not available for 'regular use' of a policy holder when someone other than the policy holder maintains 'sole dominion and control over it.' " *Barone*, 832 F Supp 2d at 810. Plaintiff contends "dominion" is defined as "absolute ownership," and "control" is defined as "to have power over." Notably, the Policy excludes

---

[2] Decisions from lower federal courts are not binding on this Court but may be considered for their persuasive value. *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

vehicles that are owned by *or* available for the regular use by plaintiff. "The word 'or' generally refers to a choice or alternative between two or more things." *Auto-Owners Ins Co v Stenberg Bros, Inc*, 227 Mich App 45, 50; 575 NW2d 79 (1997). Thus, the Policy contemplates a policy holder, such as plaintiff, would have a vehicle available to him for "regular use" that he does not own, and expressly excludes that vehicle from coverage. Plaintiff's definition of "regular use" would impermissibly render this provision nugatory because it would essentially require plaintiff to have "absolute ownership" or power over the vehicle when the Policy does not impose such a requirement. Because "courts must [] give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory," *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003), plaintiff's interpretation of "regular use" cannot apply.

Affirmed. Progressive, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly